## THE STATE v. JESSE PRUNTY, Appellant.

Division Two, December 23, 1918.

1. **LARCENY**: Presumption from Possession of Stolen Property: Exclusive. In the application of the rule that the presumption of guilt of burglary and larceny can arise from possession of stolen property only when the possession is exclusive, the possession is to be determined by the kind and character of the property. In order to raise the presumption it is not always necessary to show actual manual possession. In this case the evidence of possession of the money stolen from a burglarized bank in Missouri was sufficient to raise the presumption of the guilt of two men who the next day drove into a city in Illinois in an automobile, from which was taken a traveling bag containing the money.

2. **ALIBI**: Instruction: Burden. An instruction telling the jury that if they have a reasonable doubt of the presence of defendant at the time and place where the crime was committed they should acquit him, is sufficient for the purpose of placing the burden upon the State of proving his guilt beyond a reasonable doubt and gives him the full benefit of the defense of *alibi*.

3. **EVIDENCE**: Tracks of Automobile. Where defendants were caught carrying in an automobile money stolen from a bank burglarized in the night time, evidence showing the tracks of an automobile in a wheat field three-fourths of a mile from the bank was admissible.

4. ———: Bank Burglary: Proof of Previous Theft of Automobile: Preparation. It is always competent to prove preparation of means by which a contemplated crime may be committed and escape made, even though such evidence tends to prove the commission

of another and independent crime. In the trial of defendants for burglary with explosives and larceny, it is competent to prove that four days before the bank was burglarized the automobile, in which the money was carried away and which was found in possession of defendants, was stolen in a distant town, since the two crimes were so related that proof of the one tended to prove the commission of the other.

5. **PROSECUTING ATTORNEY: Argument to Jury: Comment Upon Defendants.** When a defendant takes the stand as a witness in his own behalf, the prosecuting attorney in his argument to the jury may make any legitimate comment on his testimony, and may call attention to his failure to explain certain facts which would tend to aid his defense.

6. ———: ———: ———: **Failure to Explain.** A reference by the prosecuting attorney in his argument to the jury to the failure of both defendants when arrested to satisfactorily explain their possession of the stolen property, cannot be regarded as a reference to the failure of one of them to testify.

7. ———: ———: ———: **Statements at Time of Arrest.** Statements of a defendant when arrested on the charge of committing a crime are admissible against him, and are therefore proper subjects of comment and argument by the prosecutor.

8. ———: ———: ———: **Alibi: Failure to Produce Testimony.** Where the appellant in support of his defense of *alibi* has testified that on the day following the burglary of a bank in Missouri he and the other defendant went from his home in Peoria, Illinois, to Farmington, another town twenty-five miles distant, to buy an automobile from a named person, it is not improper for the prosecutor, in his argument to the jury, to call attention to appellant's failure to produce evidence in support of said *alibi*. Said comment is also competent against the other defendant and can not be regarded as a reference to his failure to testify.

9. ———: ———: ———: **Desperate Character of Defendants.** Remarks by the prosecuting attorney, speaking of defendants as desperate characters who came into the county to commit crime, saying it was a serious menace to society to permit such men to run at large and appealing to the jury to assess the maximum punishment, detached from their context, are *held* not to be improper comment on the evidence presented.

10. **SUBMISSION OF CASE TO JURY.** Under the circumstances of this case it is *held* that the jury could not have understood that the case was being submitted to them without instructions from the court, at the noon hour, after the argument was closed, or that they were at liberty to deliberate together upon their verdict until further instructed.

State v. Prunty.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt,* Judge.

AFFIRMED.

*A. C. Whitson* for appellant.

(1)   There being no circumstances in any way connecting the defendant with the burglary, not even the circumstance of recent exclusive possession of any of the property alleged to have been stolen, the verdict is contrary to the law and the evidence in the case. State v. Castor, 93 Mo. 250; State v. Warford, 106 Mo. 62; State v. Scott, 109 Mo. 230; State v. Drew, 179 Mo. 321; State v. Hammons, 226 Mo. 611; State v. Belcher, 136 Mo. 137.   (2) Evidence as to other crimes or larceny must be such as to prove the specific crime charged, or prove motive, the absence of accident or mistake, a common scheme or plan embracing the commission of both offenses, or the identity of the defendant charged with the offense. State v. Barnes, 204 S. W. 266; Underhill on Crim. Evidence, sec. 305.   (3) While it is admissible to prove the presence of recent unaccounted for footprints or wagon tracks in the curtilage of a house that has been burglarized or in the road leading to it, such evidence must not be too remote. The testimony as to car tracks three-fourths of a mile from Farber was entirely too remote, nor was the time when made proved or any connection shown with the defendants by any circumstances. The evidence of Gray as to such tracks should not have been admitted. Underhill on Crim. Evidence, sec. 374.   (4) Possession of stolen property to be evidence of guilt must be exclusive, not constructive. A defendant can only be required to account for the possession of things which he actually and knowingly possesses, that is where the goods are found on his person, or in his private apartment or in a place of which he keeps the key. The possession must not be second-hand; neither will a defendant be required to account for a possession which could also

with equal right be attributed to another. State v. Drew, 179 Mo. 320; State v. Warford, 106 Mo. 63; State v. Castor, 93 Mo. 252; State v. Mills, 58 Mo. App. 159; Van Straten v. People, 56 Pac. 905. (5) If recent exclusive possession of stolen property is shown in defendant, it may be explained by the facts and circumstances in the case or rebutted by evidence of good character or by *alibi,* and if so explained or rebutted the instruction on such point must give the defendant the benefit of such good character or of *alibi.* State v. North, 95 Mo. 615; State v. Wright, 199 Mo. 166; State v. McNalley, 87 Mo. 659; State v. Taylor, 118 Mo. 173; State v. Mills, 199 S. W. 133. (6) Recent, exclusive, unexplained possession of stolen property may be sufficient evidence to sustain a conviction of larceny, and perhaps most of the authorities agree that it makes a prima-facie case if a crime has been shown to have been committed by some one. According to the weight of authority it is rather a presumption of fact, or circumstantial evidence, and is governed by rules of that class of evidence. It being a mere inference of fact or prima-facie proof the court erred in charging the jury to convict on that alone, thereby in effect directing a verdict of guilty, or at the least putting the burden on the defendant of proving his innocence of the charge against him. It is a fundamental principle that no amount of evidence can shift the burden of proof from the State. The weight or force of any such evidence is for the jury. 1 Greenleaf on Evidence, sec. 34, note E; Van Straten v. People, 56 Pac. 905; Ayers v. State, 21 Tex. App. 399; State v. Brady, 91 N. W. (Iowa) 805; State v. Hodge, 50 N. H. 510; Wigmore on Evidence, sec. 2513; Underhill on Crim. Evidence, sec. 299. (7) *Alibi* is not an affirmative defense but merely ordinary evidence in rebuttal, and there is no burden on the defendant to prove such *alibi,* but if all the evidence in the case raises a reasonable doubt of defendant's presence at the place of crime or elsewhere, he is entitled to have such doubt carried into the whole case and be acquitted. The

court must not by instruction place the burden of such defense on the defendant or in any way disparage it. The proof though insufficient to establish the defense must not be excluded from the case by the instructions. State v. Taylor, 118 Mo. 174; Johnson v. State, 21 Tex. App. 368; State v. Crowell, 149 Mo. 391; State v. Jones, 153 Mo. 461; State v. Cushenberry, 157 Mo. 189; State v. Howell, 100 Mo. 664. (8) The Prosecuting Attorney must in his argument to the jury confine himself to facts developed at the trial. He must not comment on what defendant failed to say or do in his defense. State v. James, 216 Mo. 402; State v. Drummins, 204 S. W 271.

*Frank W. McAllister*, Attorney-General, *Henry B. Hunt*, Assistant Attorney-General, for respondent.

(1) The evidence conclusively connects appellants with the burglary. The circumstances in evidence, of recent possession of the stolen property, were amply sufficient to raise a presumption of the burglary by them, which, together with their explanation of such possession, was a question for the jury. State v. Armstrong, 170 Mo. 408; State v. Yandle, 166 Mo. 594; State v. Dale, 141 Mo. 288; State v. Hutchinson, 111 Mo. 263; State v. Toohey, 203 Mo. 678. (2) The evidence of McCoy that the Ford car in possession of appellants was stolen property, and the evidence of Kunst, identifying said car, was admissible. Proof of other larcenies is admissible to prove: (a) The connection of the appellants with the transaction of which they stand accused. 3 Bishop's New Crim. Procedure, sec. 750; Clampitt v. United States, 6 Ind. Ter. 95; State v. Ditton, 48 Iowa, 678; State v. Conway, 241 Mo. 279. (b) A common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. State v. Hyde, 234 Mo. 226; State v. Bailey, 190 Mo. 280. (c) Preparation. Kelley's Crim. Law, sec. 372; State v. Kelley, 65 Vt. 535; State v. Rider, 95 Mo. 485;

State v. Sharp, 233 Mo. 287. (d) Preparation for flight. Underhill, Crim. Evidence (2 Ed.), sec. 118, p. 220. (3) The footprints and automobile tracks were not too remote in point of time or distance, nor was the evidence too remote to connect appellants with this automobile. Underhill, Crim. Evidence (2 Ed.), sec. 374; 8 R. C. L. 175. There were no objections made by counsel for appellants to the introduction of evidence as to the footprints of the three men. State v. Levy, 262 Mo. 191. (4) The possession of the stolen property was not second hand. The possession was rightly attributed to both appellants. "Possession, in this connection is not necessarily limited to custody about the person. It may be of things elsewhere deposited, but under the control of a person. In short, it may be in any place where it is manifest it must have been put by the act of the party or his undoubted concurrence." 17 R. C. L. p. 73, sec. 77; 18 Am. & Eng. Ency. Law (2 Ed.), 487; State v. Johnson, 60 N. C. 237; State v. Phelps, 91 Mo. 483. (a) Under the facts in this case, the jury was warranted in finding that appellants were jointly in possession of the stolen property. The possession, to raise a presumption of guilt, need not be exclusive. A joint possession is sufficient. State v. Toohey, 203 Mo. 679; State v. Baker, 264 Mo. 355; State v. Phelps, 91 Mo. 483. (b) The transaction, as to the manner in which Adams became possessed of Funk's grip, was extraordinary and unusual. All the circumstances surrounding this matter raised a suspicion that both Prunty and Funk were concerned in the offense charged, all of which was a question for the jury. State v. Schaffer, 70 Iowa, 375. (5) The instruction given on the question of *alibi* was correct. State v. Brown, 247 Mo. 727; State v. Barton, 214 Mo. 322; State v. Davis, 186 Mo. 539. (a) It was not necessary that the instruction concerning the recent possession of stolen property should contain a reference to the *alibi* set up by appellants. The general instruction given as to *alibi* applied to the whole case. State v. Maher, 132 Mo. 281; State v. Riney, 137 Mo.

105;   State v. Walker, 194 Mo. 263.   (b)  Instructions
must be considered all together;  and if, as a whole,
they present all the essential elements of the offense,
and advise the jury on all questions of law arising in
the case, they are not erroneous. State v. Maher, 132
Mo. 281;   State v. Kinder, 184 Mo. 295;   State v. Mont-
gomery, 230 Mo. 671;   State v. Riney, 137 Mo. 105;
State v. Walker, 194 Mo. 263.    (6)   The instruction
given, concerning possession of stolen property, was
correct, and did not shift the burden of proof to ap-
pellants.    State v. James, 194 Mo. 277;   State v.
Moore, 101 Mo. 324;   State v. Levy, 262 Mo. 191. These
instructions submitted to the jury the question whether   .
the prima-facie case presented by the State was over-
thrown, and the jury was properly instructed that if
such presumption was not overthrown, it should pre-
vail.    State v. Kelly, 73 Mo. 616;   State v. King, 214
Mo. 390;   State v. Court, 225 Mo. 614.    (7)   The in-
struction on alibi was sufficient in form and substance.
State v. Barton, 214 Mo. 322;   State v. Brown, 247
Mo. 727;   State v. Davis, 186 Mo. 539.   The court by
such instruction, did not place the burden of that de-
fense on appellants, or in any way disparage it;  nor
did such instruction exclude any of the proof relative
thereto. State v. Hale, 156 Mo. 109;   State v. Bateman,
196 Mo. 41.    (8)   The remarks of the prosecuting at-
torney complained of, not being embodied in the motions
for new trial, are not reviewable. State v. Nickens, 122
Mo. 611;   State v. Thavanot, 225 Mo. 550;   State v.
Miles, 199 Mo. 547.

WHITE, C.—The appellant and one Harry Funk
were tried on a joint information and convicted of
burglary with explosives, and of larceny. The defend-
ants filed separate motions for new trials and prosecute
separate appeals from that conviction, the companion
case against Harry Funk being No. 20963.

The safe of the Farber Bank, located at Farber,
Missouri, was blown open by explosives, and the bank
robbed on the night of the thirteenth, or early in the

morning of the fourteenth, of November, 1917. Farber is a town of 450 inhabitants in Audrain County, on the Chicago & Alton Railroad, about twenty miles northeast of Mexico, the county seat. The defendant Prunty and his companion Funk were apprehended in Peoria, Illinois, about four o'clock in the afternoon, November 14, 1917. The City of Hannibal was estimated to be forty miles or more from Farber, and Peoria about 115 to 125 miles from Hannibal.

On the evening of November 13, the bank vault, containing money and other valuables, was closed with a combination time-lock set to open the following morning at seven o'clock. About one o'clock a. m., November 14th, several persons in the town of Farber heard five explosions occurring about ten minutes apart. Investigation showed that the bank had been entered and the safe wrecked. It appears that the knob of the combination lock was knocked off, the crevice around the closed door filled with soap to prevent the escape of gas, the hole in the door filled with explosives, and the door then blown open.

The next morning blood-hounds were brought to the scene but refused to take the trail, it was said on account of gas which filled the room; $2965.46 was missing from the bank safe, of which $1500 was in currency and the remainder in silver, nickels and pennies. It was discovered the next morning that a wheat field about three-quarters of a mile from the bank had been entered, through a gap in a wire fence, by an automobile which drove in, turned around and drove out. It came from the north and drove out toward the north. A wet place where the radiator had leaked indicated that the car had been stopped for a time. The footprints of three men led from where the car had been stopped out toward the road and toward Farber, and the footprints of apparently the same three were found returning to the car. The ground was soft, the footprints and car tracks were fresh, indicating they had been made the previous night. One or two witnesses testified that the tracks of the car indicated it was a

Ford, with smooth tires in front and non-skid tires behind. The tracks of the car led north towards a place called Center, about fifteen miles from Farber, the tracks indicating at turns that the car was running fast. It was followed in that direction and beyond Center, where it came to a hard road and the trail was lost. It was going in the direction of New London and Hannibal. There was a bridge across the Mississippi River at Hannibal, and also one at Quincy, fourteen miles north of Hannibal. Quincy was estimated to be 80 to 115 miles from Peoria. It was shown by the defense that a large car, not a Ford, passed over the toll bridge at Hannibal about 5:30 in the morning of the 14th, and no other kind of a car passed over that morning.

About four o'clock in the afternoon of the 14th, Prunty and Funk drove into Peoria in a Ford car with smooth tires in front and non-skid tires behind. A motorcycle policeman stopped them, because there was no license number on the car. The men and the car were taken to the police station for the purpose of investigation. The men said that three miles back, where they had stopped to get water, they had had a Missouri license tag on their car. The car was dusty, the men were dusty, "their clothes were mussed and dusty and their faces grimy." Funk was driving the car. They said they had bought the car for $150 from a man they met on the street in Mexico, Missouri. They made this statement to the officer who arrested them and repeated it to the chief of police at the police station in the presence of another officer. The chief asked them if they had a bill of sale. Prunty searched for such document in his pocket, but could not find it and said he guessed he must have lost it. The men then were released, the car was retained for further investigation, and the officer who arrested the men was ordered by the chief to take the car over to the patrol house for that purpose. In doing so he discovered a grip in it. This grip was taken to the chief's office and examined. It was found to contain a revolver, some

cartridges, a hack saw, some fuse and fulminating caps, a pair of greasy gloves, four collars and a shirt. Two collars, sizes 15½, were unmarked, and two 16½ collars and the shirt were marked "H. Funk." Funk was a large man, five feet eleven inches in height, weighing 185 to 200 pounds; Prunty was about five feet, nine inches, weighing about 165 to 180 pounds—probable fits for the two sizes of collars.

There was also in the grip $1085.46 in silver, nickels and pennies, the denominations of the silver being dollars, half-dollars, quarters and dimes—the same kind of coins as were taken from the bank. Fifty dollars in currency was found on Prunty, three ten-dollar bills and four five-dollar bills. Some of these bills were torn—had parts burnt or torn off—and small fragments of torn bills were found in the grip. The money taken from the bank was in five and ten-dollar bills. Some of the nickels found in the grip were done up in packages and wrapped with blank checks of the Farber Bank. It was shown that the Farber Bank was accustomed to wrapping its nickels in that manner and had some so wrapped in the vault of the bank on the night of the robbery. The officers also found in the grip a code book, such as is used by banks to abbreviate telegrams, which was identified by the bank officials as belonging ·to the Farber Bank. In the code book, as it was found in the grip, was an envelope containing a check drawn by one R. Christoferson, payable to one John F. Kaiser, for $10.20. This check thus placed in the envelope and in the code book, as was shown by the officers of the bank, had been left at the bank for the purpose of delivery to the owner when called for, and they were in the vault when the bank was closed the night of November 13th. There was also found in the grip the screw-head of a bolt which, when tried, fitted the hole in the door of the safe in the Farber Bank, from which it is supposed to have been blown by an explosion. This would indicate that the burglars in their hurry swept into the grip, with-

out inspection, everything that was loose in the vault, including the telltale articles mentioned.

The Ford car in which the men arrived in Peoria was identified by N. E. McCoy, a minister of the Gospel, who swore that it was stolen from him at Slater, Saline County, Missouri, November 10, 1917, four days before it appeared in Peoria.

After the discovery of the grip in the car the two, men were rearrested and examined separately by the officers as to where they got it. This was after they had had time to change their clothes. Prunty said as they were driving along the road between Farmington and Peoria they overtook a man walking, carrying his grip. He asked for a ride and they took him in and brought him to Peoria. Farmington is about twenty-five miles west of Peoria. The grip, with its contents, weighed about sixty pounds, or more. Prunty was asked also about the currency found in his pocket and he said he didn't know where he got it, that he just had it.

When Funk, separately, was asked about the grip he admitted that he owned it, and said the reason his collars and some of his effects were in it was that he had loaned it some time before to a man to take a trip. He didn't know the man well enough to know his name, and didn't look in the grip to see what might be in it. He said when they were driving through Quincy on the 14th he saw the man to whom he had loaned the grip standing on the street and they picked him up and brought him to Peoria; Quincy was shown to be eighty or more miles from Peoria. It was not shown what Funk's calling was, but Prunty had been a saloon-keeper and bartender, and a demonstrator for the Maxwell car.

In defense Prunty told a different story from either of those the two had related to the officers when arrested. The officer who intercepted them because of the absence of a license tag testified that at the time there was a third man on the back seat of the Ford

276 Mo.—24

car; he saw him there in dim outline at the time the car was stopped. The curtains were on the car when there was no apparent need for them; that was one thing that attracted his attention. He did not see the man on the back seat after that, nor know when he left the car; nor did anyone else see him. He was not in the car when it was taken to the patrol house for detention, and the sight of the man by the officer was such that he could not identify him if he had seen him again. On that shadowy individual the defense seems to be built up. Prunty testified that he and Funk went to Farmington, which is about twenty-five miles from Peoria, on the morning of November 14th, leaving Peoria about seven o'clock that morning. They went there for the purpose of buying a car from one Isaac Dalton. They did not see Dalton, nor find him in Farmington on that day, but early in the afternoon a man by the name of Adams drove through Farmington in the Ford car. In conversation with him they discovered that the car was for sale. Funk recognized the man driving the car and introduced him to witness by the name of Adams. They found that he was driving to Peoria. The man said he was tired and asked Funk to drive the car into Peoria for him. Funk did drive it into Peoria and arrived there sitting in the front seat with Prunty. He testified further that Adams told them on the journey that he had bought the car in Mexico, Missouri, for $150, and there was some conversation between him and Funk about the sale of the car to Funk. Prunty said further that before they arrived at Peoria, Adams, in the back seat, reached over and stuck a ten-dollar bill in witness's pocket for his services in driving the car over,—one of the bills found on him when arrested. He said that Adams told him he drove from Mexico, Mo., that morning, and witness noticed the grip in the car at the time.

Mrs. Funk testified for the defense that Mr. Funk stayed at home on the night of the 13th, left early in the morning, November 14th, and returned about 4:20 in the afternoon of that day; that some ten days be-

fore a man by the name of Adams came to the house to borrow her husband's traveling bag; she picked it up and handed it to him; it felt light and she didn't look to see if there was anything in it.

No attempt was made by the defense to corroborate the statement of Prunty relating to his alleged negotiations with the man Dalton, or his visit to Farmington on the day in question, nor was there any further attempt to identify Adams. The *alibi* offered in evidence depended entirely upon the testimony of Prunty and Mrs. Funk.

I. The defendant demurred to the evidence at the close of the State's evidence, and again at the close of all the evidence. These demurrers were overruled and error is assigned here to those rulings. For that reason the evidence has been stated fully above. While the evidence is circumstantial it is quite convincing and sufficient to authorize a verdict of guilty. [State v. McGuire, 193 Mo. 215.]

The particular respect in which the State failed to make out its case, it is claimed, was its inability to prove the possession of the stolen property in the defendant. It is asserted that in order to raise a presumption of guilt which would authorize conviction, it must be shown that such possession was exclusive in the defendant, was personal, actual and not constructive. Instructions in the usual form regarding such presumption were objected to and error assigned to giving them.

Exclusive Possession.

The rule is that the presumption of guilt from possession of stolen chattels can arise only when the possession is exclusive. Therefore, it is held that where stolen property is found in a house, or in a trunk, or other place to which other persons have equal access with the defendant, the possession is not proven so as to warrant such presumption. [State v. Castor, 93 Mo. 242; State v. Belcher, 136 Mo. 135, l. c. 137; State v. Warford, 106 Mo. 55; State v. Drew, 179 Mo. 315.] Also where property recently stolen was found near the premises of defendant and not on the property under

his exclusive control. [State v. Hammons, 226 Mo. l. c. 611.] Where property was found on the premises occupied by the wife of the defendant with whom defendant was not living at the time, the presumption was not raised. [State v. Owsley, 111 Mo. 450, l. c. 455.]

However, it has been pointed out that the character of the possession is determined by the kind and character of the property. In order to raise the presumption it is not always necessary to show actual manual possession. Some things are not capable of being carried in one's pocket. The traveling bag in question was not. In the case of State v. Burns, 263 Mo. l. c. 599, the defendant, and another person jointly indicted with him, sold several sacks of cowpeas, which at the time were in the barn of the defendant. Neither the defendant nor his associate were near the barn, but told the purchaser where to get the peas. It turned out that the peas had been stolen. The presumption of guilt attached from such possession as was shown.

In the case of State v. Toohey, 203 Mo. l. c. 679-80, the defendant was charged with stealing certain brass fixtures from a Pullman car. He went with another person, named Carrigan, to a junk shop, for the purpose of selling the articles. The court said although the stolen property was partly or even exclusively in the possession of Carrigan at the time it was purchased from him and the defendant by the junk dealer, yet defendant's presence and association with Carrigan made the evidence of such possession competent.

The case of State v. Baker, 264 Mo. 339, was where certain goslings had been stolen and were found in the possession of defendant's wife on defendant's premises. It was held the possession was sufficient to warrant the presumption of guilt in the defendant.

In the case of State v. Phelps, 91 Mo. 478, l. c. 483, the defendant was traveling with a woman whom he introduced as his wife; certain stolen goods were found

in her possession, and the possession was held sufficient to warrant the presumption of guilt against him.

In the case of State v. Wohlman, 34 Mo. 482, a woman was convicted of larceny. The evidence showed that certain jewelry was stolen from a store and this jewelry was found on the person of defendant's husband after she had joined him at some distance from the store; it was held that the presumption of her guilt obtained upon such possession. [See also Murphy v. State, 86 Wis. 626; Frazier v. State, 135 Ind. 38; Mass v. State, 81 S. W. (Tex.) 46; 17 R. C. L. p. 71, sec. 76.]

That the traveling bag taken from the automobile in which the defendant and his companion were driving contained the property taken from the burglarized bank, was not disputed. Just here the appellant claims there was no exclusive possession of that traveling bag, because of the presence of the alleged Adams who, Prunty testified, owned the car.

The two men Funk and Prunty drove into Peoria in apparent exclusive control of the car. They were halted on account of having no license tag, made no, disclaimer of absolute control and possession of the car, went to the police station for the purpose of straightening out the matter without any other kind of a claim; explained that they had bought the car in Missouri a few days before and that they had lost the Missouri tag; so far as the facts and their statements showed they were in exclusive possession of the car and its contents. The traveling bag belonged to Funk, as was admitted.

It was further shown by the tracks of three men that that number probably had been engaged in burglarizing the bank. The uncertain individual on the back seat of the car, whom the motorcycle officer thinks he saw when he started the car toward the police station, and whom nobody else saw in the car either then or afterwards, is the only evidence that any other person was in the car at the time the defendants were intercepted. In explaining the presence of the traveling

bag after their arrest Prunty said that the stranger had got in to ride with them at Farmington, and Funk said he got in at Quincy (some fifty miles further), but neither explained where he left the car nor what became of him. If there was a third person in the car at the time they were intercepted it might be inferred that he was one of the trio who robbed the bank, and that Funk and Prunty were the other two. Their inconsistent explanations of his presence were entirely contradicted by the later explanation of Prunty on the stand. He then said Adams was driving the car and picked *them* up. The third man, if there was one, might have escaped from the car before they got to the police station or before it was taken in charge by the officer. The proof of possession was entirely sufficient to warrant the presumption.

The instructions mentioned were in the usual form, covered every contingency of fact, and allowed the jury to say, under the evidence, whether the exclusive possession of the stolen property was in either one or Instruction. both of the defendants, or in Adams, or in all three. They were further instructed that unless such possession was in defendants they should acquit. The instructions were authorized by the cases cited above. [State v. Burns, 263 Mo. l. c. 599; State v. Baker, 264 Mo. l. c. 355; State v. James, 194 Mo. l. c. 277.]

II. Appellant claims the instructions were not proper because his defense of *alibi* was not embodied in such a way as to place the burden of proving guilt beyond a reasonable doubt upon the State. The point Alibi. is not well taken. The jury was instructed as to the defense of *alibi* and told that if they had a reasonable doubt of the presence of the defendants or either of them at the time and place where the crime was committed, they should acquit them, or either of them. This was entirely sufficient for the purpose and gave defendants the full benefit of that defense and did not place the burden upon them. [State v. Howell,

100 Mo. l. c. 664-5;  State v. Wright, 199 Mo. l. c. 165-6; State v. Bateman, 196 Mo. l. c. 41.]

The instructions given by the court at the request of defendants were voluminous and covered every possible phase of their defense.  Appellant claims that the court failed to include in the instructions any reference to the question of his good character.

Good Character. The evidence of good character presented by him would hardly justify its consideration. but the court did give a correct instruction asked by him covering that particular phase of his defense, and therefore he cannot complain.

III.  Error is assigned to the admission of evidence showing the tracks of an automobile in the wheat field—no objection was made to the evidence of tracks of men.  Such evidence, usually, is held admissible. [Underhill on Criminal Evidence, sec. 374.]

Automobile Tracks. Although such automobile tracks were three-fourths of a mile from the bank, the place was entirely convenient for the purpose; besides, the defendants were caught carrying the loot in the car which apparently had made the tracks.  The evidence was admissible to show the criminals were trailed.

IV.  It is claimed that error was committed in admitting evidence that the Ford car was stolen on November 10th, in Slater, Missouri, on the ground that that was a separate and distinct crime for which defendants might be tried.

Proof of Other Crimes.

It is always competent to prove preparations beforehand of means by which a contemplated crime may be committed and escape made, though such evidence tends to prove the commission of another and independent crime.  [State v. Rider, 95 Mo. l. c. 485;  State v. Sharp, 71 Mo. 218.]

The possession by defendants of the stolen automobile, their possession of the stolen money, and their carrying it away in the automobile, connected the two

crimes; they were so related that proof of one tended to prove the commission of the other by the same parties. The evidence was admissible for that reason. [State v. Hyde, 234 Mo. 1. c. 226; State v. Barnes, 204 S. W. 1. c. 266; State v. Bailey, 190 Mo. 1. c. 280, 282.]

V. Appellant claims error was committed in permitting the prosecuting attorney, in his argument, to make certain comments regarding defendants. The passage from the argument quoted in the record is a skeleton and fails to give the context. Three features, however, appear in the passage quoted. One is a reference to the unsatisfactory statements about picking up Adams made to the officers by defendants when they were arrested, and comment upon their failure at the time to make a satisfactory explanation of their possession of the stolen property. The second feature of the argument related to the failure of defendants to produce additional witnesses in support of their *alibi*—their failure to bring testimony from Farmington to show their presence there on the 14th. The third feature related to the remarks of the prosecutor when he spoke of the defendants as desperate characters, coming into the county to commit crime, and said it was a serious menace to society to have men like that running at large; he also appealed to the jury to fix the maximum punishment.

The reference of the attorney to the failure of Prunty and Funk to explain, when arrested, cannot be regarded as a reference to the failure of Funk to testify in the case. [State v. Gordon, 253 Mo. 1. c. 518; State v. Ruck, 194 Mo. 416; State v. Fields, 234 Mo. 625.]

The statements of a defendant when arrested on charge of committing a crime are always admissible against him. [State v. Daly, 210 Mo. 664; State v. Wilkins, 221 Mo. 448.] Since the statements of defendants at the time they were arrested were properly admitted in evidence they were proper subjects of comment and argument by the prosecutor. If their statements were inconsistent, flimsy and improbable, it was

entirely proper for the prosecutor so to characterize them.

The failure of the defendants to produce evidence in support of their *alibi* by bringing witnesses from Farmington was a proper subject of comment. Prunty testified in his own behalf regarding the *alibi* by saying that he and Funk spent the day in Farmington. It is now the rule in this State that when a defendant takes the stand in his own behalf the prosecutor in his argument may make any legitimate comment upon defendant's testimony, and may call the attention of the jury to his failure to explain certain facts which would tend to aid his defense. [State v. Larkin and Harris, 250 Mo. 218; State v. Lewis, 264 Mo. l. c. 432; State v. Murray, 193 S. W. l. c. 833-4.] These cases overrule earlier cases upon this proposition. In the Larkin case the prosecutor called attention to the failure of the defendant, while he was on the stand, to deny certain statements attributed to him. Here the prosecutor called attention to the failure of Prunty to produce evidence in support of his *alibi;* that is, in support of Prunty's own statement about his presence in Farmington on the day in question. It was proper also, as against Funk, because it could not be regarded as a reference to his failure to testify any more than it would be to mention the failure of the defendants to produce evidence in support of any feature of their defense. [State v. Hughes, 258 Mo. 271; State v. Parker, 172 Mo. 191; State v. Preston, 77 Mo. 294.]

The other remarks made by the prosecutor, detached from their context as they are, do not appear to be improper comments upon the evidence as presented.

VI. After the argument of the case the sheriff was directed to take charge of the jury and show them to the jury room, whereupon the defendants objected on the ground that the case was being sub-

Submission
Without
Instructions. mitted to the consideration of the jury without instructions from the court. The court

overruled that objection and thereby erred, it is claimed, by the appellant.

The court, upon this objection being made, said in the presence of the jury: "The court has not submitted the case to the jury. It is now the noon hour and the jury will be given their dinner before the case will be submitted to them."

The jury could not have understood the case was submitted to them, nor that they were at liberty to deliberate together upon their verdict; nor is it claimed that they did in fact deliberate upon the case for one moment before they were fully instructed, which was done at 1:15 when they returned to the court room. They were not released from the instructions usually given them regarding their behavior during the progress of the trial; it is not claimed there was a lack of such instruction.

Other errors are claimed which we do not find it necessary to consider.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All the judges concur.