# THE STATE v. JOE TRACY.

### Division Two, December 1, 1920.

1. **SUFFICIENT EVIDENCE: Suspicion.** If at the utmost the evidence suffices merely to raise a suspicion that the accused had some guilty connection with the crime, and everything proven might be true and he yet be entirely innocent, a conviction cannot stand. So where the evidence merely shows that a bank had been burglarized; that shortly afterwards defendant and two others were found three-tenths of a mile from the scene of the crime, sitting on the river bank in the darkness, near a skiff containing a quantity of burglar's tools, gas tanks, gauges and other tools used in melting steel and penetrating steel vaults; that accused protested when a flashlight was directed at him, leveled a rifle at one of the two men who had unexpectedly come upon them, and immediately thereafter fled; and that accused was subsequently identified as one of the three men, by one of the two who had thus found them and by only one, none of the stolen property having been traced to defendant, the evidence is not sufficient to support a conviction of the charge of burglary.

2. **WITNESS: Cross-Examination: Impeachment: Former Arrest.** Evidence that a witness has been arrested does not tend to impeach his credibility. It is improper conduct for the attorney for the State to ask a witness for defendant whether or not the witness has ever been arrested; and, when objection to the question is sustained, it is still more improper for the attorney to announce his intention of calling another witness to whom he proposes to propound the same question.

3. **INSTRUCTION: Reference to Charge.** A causal reference to the charge in the information in an instruction telling the jury that if they believe from the evidence beyond a reasonable doubt that defendant broke into the bank with felonious intent to steal "money, notes, checks, goods, merchandise or other valuable things, as charged in the information," then they should find him guilty, is harmless, the information also having been read to the jury.

Appeal from Saline Criminal Court.—*Hon. John A. Rich*, Judge.

REVERSED AND REMANDED.

*W. H. Meschede* and *Lynch, Kennedy & Guffin* for appellant.

(1)    The evidence was insufficient to sustain the verdict. State v. Francis, 98 S. W. 11; State v. Jones, 177 Mo. 665; State v. Gordon, 98 S. W. 662; State v. Prendible, 165 Mo. 350; State v. DeWitt, 190 Mo. 51. The witness Hezekiah Smith was impeached and discredited, and his testimony should not .be permitted to stand. State v. Helton, 164 S. W. 457; State v. Huff, 161 Mo. 487; People v. Lyons, 51 Mich. 215; State v. Packwood. 26 Mo. 340; State v. Primm, 98 Mo. 373; State v. Prendible, 165 Mo. 352; State v. Gordon, 98 S. W. 39.    (2) The verdict was the result of passion, prejudice or partiality on the part of the jury. State v. Primm, 98 Mo. 372; State v. Packwood, 26 Mo. 340; State v. Burgdorf, 53 Mo. 65; State v. Mansfield, 41 Mo. 470; State v. Danbert, 42 Mo. 238; State v. Jaeger, 66 Mo. 173; State v. Castor, 93 Mo. 242; State v. Prendible, 165 Mo. 353; State v. Webb, 162 S. W. 628.    (3) Prejudicial error was committed by the attorney assisting the State in asking witness Atkinson if he had ever been arrested, and in making the statement before the jury that the same question could be propounded to witness McGrath for the defense, but it could not be shown if the defense objected to it.    State v. Webb, 162 S. W. 628.    (4) The court erred in admitting evidence about the boat which was found down the river, for the reason that no connection was shown between it and defendant.    State v. Thomas, 99 Mo. 257.

*Frank W. McAllister,* Attorney-General, for respondent; *Don C. Carter* of counsel.

(1)    The weight of the evidence on the credibility of the witnesses is for the jury, and if there is substantial evidence to sustain the verdict, this court will not interfere with, nor disturb it.    State v. Reagan, 280. 57;

State v. Oertel, 280 Mo. 129; State v. Underwood, 263 Mo. 685; State v. Concelia, 250 Mo. 420; State v. Bowen, 247 Mo. 595; State v. Reed, 237 Mo. 231. (2) Beyond the peradventure of a doubt, the defendant is guilty under the facts stated in evidence.

WILLIAMSON, J.—The defendant, Joe Tracy, having been found guilty of burglary in the second degree and his punishment having been fixed at confinement in the penitentiary for fifteen years, has duly appealed. We adopt the State's statement of the facts, with slight modifications.

On March 19, 1918, the Miami Savings Bank, a banking corporation in the City of Miami, Saline County, Missouri, was burglarized and some safety deposit boxes were removed from the vault, taken to the rear of the bank building,- pried open, some of the contents of said boxes destroyed, and about six thousand dollars worth of Liberty bonds and about one hundred dollars' worth of thrift stamps were removed from said safety deposit boxes. Entrance to the bank had been effected by prying open the screen and window on the north side of the bank. The door to the vault of the bank had been penetrated with a fuse, and the fuse had been burned around the combination lock, and, in this way, the big steel door was opened. Inside of said vault was a large safe in which many valuables of the bank were kept. This was not opened, but there had been an attempt made to enter this safe by cutting into it.

On the morning of the 19th of March, Mr. Calvert, sheriff of Carroll County, had been called to the town of Miami for a woman who had been charged with some offense at Carrollton; he came from Carrollton down to the Carroll County side along about three or four o'clock in the morning to Miami Station, which is just across the river from the town of Miami. He hunted up the ferryman, a Mr. Rader, and requested him to ferry him across to the Miami landing. A Mr. J. A. Commons

was with the sheriff at this time. They went to Mr. Rader's house and aroused him about three or four o'clock in the morning and then went down to the edge of the river in order to be ferried across. When they arrived at the usual ferry landing, they found a big automobile standing there by the river bank and in this automobile were three overcoats, a few empty grips and some other things. Mr. Rader, the ferryman, found that his boat had been removed from where he usually chained it to the landing, and it could not be found. He then located a boat belonging to another man and in this took the sheriff, Calvert, and Mr. Commons across the river to the Miami landing. As soon as they had landed, Mr. Rader fastened the boat to a log at the foot of the hill. He took a lock out of his pocket and locked his boat to this log.

Then the sheriff, Calvert, and Mr. Commons proceeded on up the hill to the town of Miami and took charge of the woman who was then in the custody of Mr. Hezekiah Smith, a justice of the peace at Miami, who had theretofore arrested this woman under orders from the sheriff of Carroll County. The sheriff, Mr. Commons, Mr. Smith and the woman all went back down to the ferry landing, preparatory to recrossing the river. Commons and Smith were a little distance ahead of Mr. Calvert and the woman, and they arrived at the river's edge first. When they got down there close to the river's edge, they saw three men sitting on a log close to a boat. One of the three men made some inquiry of Smith and Commons as to when they could get a ferry across the river; Commons had a flash light with him and he turned it on these three parties.

Immediately, one of them jumped up and pulled a gun on Mr. Smith, and one of the others jumped into the boat and attempted to cut this boat loose, so they could get out into the river. The other fellow grabbed hold of Mr. Smith and attempted to push him into the boat with them. They failed to do this, and Smith got away.

Commons had already taken to his heels and proceeded back up towards town. Smith and Commons both called for the sheriff, and by the time the sheriff, Commons and Smith could get back down to the river bank, the three men had jumped into another boat and had gone on down 'the Missouri River. In the boat were found an acetylene gas tank, an oxygen gas tank, and a lot of gauges and tools of the kind that are used in melting steel, penetrating through steel vaults, and other steel material; in other words, a lot of burglar's tools.

All these parties then proceeded back up town and aroused the people, feeling that some crime had been committed by these men, and as soon as they got back up town, they discovered that the bank had been burglarized.

The boat in which the three parties aforesaid had escaped down the river was found the next day a mile or two from this Miami landing; the nearest railroad station from where this boat was found was Slater, Missouri, on the Chicago & Alton Railroad.

Late that night or early the next morning, about two or three o'clock, three men appeared at the railroad station, this defendant and two others, and one bought a ticket to Kansas City, and the other two men purchased tickets to St. Louis. The automobile, which was standing on the Carroll County side, at the ferry landing, mentioned heretofore, had been stolen from St. Louis, and the acetylene and oxygen gas tanks also came from St. Louis.

Defendant, Tracy, was arrested on Friday or Saturday following the robbing of this bank and was positively identified by Hezekiah Smith as being one of the three men sitting on the log at the foot of the river on the night in question. The ticket agent and his wife, Mr. and Mrs. Butts, at Slater, Missouri, also positively identified the defendant, Tracy, as being the man who appeared at the railroad station in Slater on Tuesday night or Wednesday morning and there had bought a

ticket to Kansas City, Missouri. None of the Liberty bonds aforesaid were ever recovered. The defense was an *alibi*.

It should be noted that defendant denies that he was at Slater. Missouri, at the time and place stated in respondent's statement of the facts. Some fifteen witnesses testified in support of the *alibi* set up by defendant, and according to these witnesses defendant was in Kansas City, Missouri, at the time of the commission of the burglary in question. Defendant did not testify in his own behalf.

Numerous assignments of error are urged upon our attention. Such of them as we think it necessary to discuss will be set forth in the opinion proper.

I. Appellant asserts that the evidence was insufficient to support the verdict. Taking the evidence most favorable to the State, it merely shows that very shortly after the burglary was committed, the appellant, in company with two other men, was found three-tenths of a mile from the scene of the crime, sitting on the river bank in the darkness, near a skiff containing a quantity of burglar's tools and other articles used by such gentry in their nefarious enterprises; that appellant protested when a flashlight was directed at him, leveled a rifle at one of the State's witnesses, and immediately thereafter fled. One witness for the State, and but one, indentified appellant as one of the three men thus found. This witness had never seen appellant before and saw him but a very short time on this occasion. None of the stolen property was traced to appellant's possession. Further than as above stated, he was in no way connected with the burglarious equipment above mentioned.

Is this evidence sufficient to support the conviction? Clearly not. At the utmost, the evidence suffices merely to raise a suspicion—perhaps a strong suspicion—that appellant had some guilty connection with the burglary. But men are not to be convicted upon suspicion, but upon proof. All that the State proved might be entirely true

and the appellant might yet be entirely innocent. There is no need to argue the matter. The facts speak for themselves. We need not refer to the *alibi* shown by some fifteen witnesses who testified in appellant's behalf. Even if that evidence were absent, we must nevertheless hold the evidence of the State too weak to support a conviction. If authority is desired upon so plain a proposition, reference may be had to State v. Scott, 177 Mo. 665; State v. Francis, 199 Mo. 671; State v. Adkins, 222 S. W. 431, and to the authorities cited in those cases.

II. Appellant also assigns as error the conduct of an attorney representing the State in asking a witness introduced by appellant, whether or not the witness had ever been arrested. Such a question was highly improper, and we should be paying but a poor compliment to counsel's knowledge of the law if we were to assume that he did not know the question to be an improper one. Once again we pause to remark that evidence that a witness has been arrested does not tend to impeach his credibility. The learned trial judge very promptly and properly sustained an objection to this question, and counsel for the State thereupon, in the presence of the jury, avowed his intention of calling another witness to whom he proposed to propound the same question. We do not need to characterize such conduct. We may add, however, that trial courts are endowed with ample power to prevent and to punish such manoeuvres, and do well when they make judicious use of the power thus vested in them. We assume that this error will not recur upon another trial of this case.

*Former Arrest.*

III. Error is also assigned in the admission of testimony concerning a skiff which was found about two miles down the river and on the Saline County side of the river, on the day after the burglary was committed. The evidence for the State tended to show that the boat in question was at the place where appellant was found shortly after the burglary was committed; that appellant and his two com-

*Connection With Crime.*

284 Mo.—40

panions got into it at that place and rowed away; that a few hours later this boat was found abandoned about two miles down the river, on the Saline County side and in the general direction of Slater, Missouri, where appellant, according to the State's witnesses, boarded a train on the morning of the day after the commission of the crime in question. This evidence tended to connect appellant with the commission of the crime and was properly admitted.

IV. Appellant also complains of instruction number two given on behalf of the State. In substance, this instruction was that if the jury believed from the evidence beyond a reasonable doubt that appellant broke into the bank in question with the felonious intent to steal "money, notes, checks, goods, merchandise or other valuable things, as charged in the information," then the jury should find the defendant guilty.

<small>Reference to Information.</small>

The information, which had been read to the jury, contained the same language. This casual allusion to the charge in the information was harmless. The instruction did not refer the jury to the information for any element of the crime, but on the contrary, contained a complete charge concerning the nature of the crime in question and all of its essentials. There is no merit in this assignment. [State v. McLaughlin, 149 Mo. 19, 1. c. 33.]

What we have here said concerning instruction number two applies in large measure to instruction number five, about which appellant also complains on much the same grounds. Appellant also insists that there was no proof of the ownership of the bank building. Should there be another trial of this case, the ownership of the building will doubtless be somewhat more clearly proven.

The other assignments of error are either so lacking in merit as to make a discussion of them unnecessary, or else they relate to matters which are not likely again to

arise. It may be that upon a second trial, the State can prove a case against appellant. The facts which we have enumerated would seem to invite further investigation. In view of the present extraordinary prevalence of crime, and the necessity for a rigorous enforcement of the law, we are unwilling to reverse this case outright.

For the reasons stated, this case should be reversed and remanded. It is so ordered. All concur.