**STATE of Missouri, Respondent,**

v.

**George Lawrence WATSON, Appellant.**

No. 48701.

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1961.

David Q. Reed, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Albert J. Stephan, Jr., Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant was convicted of the crimes of second-degree burglary and stealing. The jury assessed his punishment at three years' imprisonment for each offense. On this appeal the defendant contends that the evidence was insufficient to prove that he committed the offenses charged and, therefore, the trial court erred in overruling his motions for judgment of acquittal and for a new trial.

The evidence proves and the defendant concedes that on Sunday, March 20, 1960, Jim Summers' service station, located near the intersection of Highway 71 Bypass and Highway 150 in Jackson County, was forcibly entered and merchandise, consisting principally of 191 cartons of cigarettes, was stolen. Before daylight on the day in question, the manager approached the station on foot intending to open it for the day's business. As he did so, he saw a dark automobile with a sun visor in the driveway and two men going to and from the station. There was not sufficient light for him to be sure if the persons he saw were men or women, white or colored, or if there were more than two persons present. They appeared to be "almost shadows moving back and forth", and he could not identify any of the participants. He tried to call the police from a nearby telephone booth but could not see to dial. He then returned to his home, got his gun and told his wife to call the police. When he returned to the station, the burglars had departed. The burglary was reported to the Missouri Highway Patrol at approximately 5 a. m. and a general alarm was broadcast over the Highway Patrol radio system at about 5:03 a. m.

Sometime thereafter a police officer of Raytown in Jackson County saw an automobile violate a red traffic light at the intersection of Raytown Road and Highway 50. After a pursuit of about one-half mile, the automobile stopped and the driver, John Floyd Thomas, was arrested for traffic violations. He appeared to have been drinking. The defendant was riding in the automobile on the passenger side of the front seat. The police officer noticed that the automobile was dark green in color and had a sun visor which fit the description of the automobile used in the burglary of the service station which the police officer had heard broadcasted on the radio shortly before.

Both Thomas and the defendant were then arrested and the stolen merchandise was found in the car. Some of it was on the back seat, but most of it was in the trunk of the car, the lid of which lacked about four or five inches of closing. The automobile had been stolen in Texas by Thomas and brought by him to Missouri. At the time of the arrest, the automobile was westbound on Highway 50 at a point west of its intersection with 71 Bypass.

When questioned by the police, both Thomas and the defendant denied any knowledge as to the ownership of the cigarettes, where they came from or anything about them. Two automatic pistols were found under the front seat of the automobile; one a .22 caliber was under the driver's side and the other, a German-made automatic sometimes described as a .32 caliber or a 7.65 millimeter, was found under the seat on the passenger's side. The German automatic was loaded with .32 caliber revolver cartridges, the rims of which had been filed off so that they could be used in an automatic. When the defendant was searched at the Raytown Police Station, four .32 caliber revolver cartridges were found in a ruler pocket on the right leg of his blue jean trousers. The shells found in the defendant's pocket were of the same caliber and made by the same manufacturer as those in the automatic pistol, but the rims had not been filed down. These revolver shells could be fired from the German automatic, but it would be dangerous to do so, and the spent shells would not automatically eject after the gun was fired.

Thomas and the defendant were both charged with the burglary and theft. Later Thomas pleaded guilty and was sentenced to a term of six years in the penitentiary, three years for each offense. The defendant pleaded not guilty and was defended by legal counsel appointed by the court. The appointed counsel has also briefed the case and argued it orally on appeal.

The defendant did not testify, but witnesses on his behalf gave testimony designed to exculpate him. A sister of his testified that he arrived in Stover, Missouri, on Saturday afternoon, March 19, and stayed there at their mother's home until about 3 a. m. Sunday, March 20, when he started for Kansas City in his automobile in order to go with his brother-in-law to Oklahoma. Stover is about 114 miles from Kansas City. A nephew of the defendant, whose father owned a tow truck testified that the defendant called him "around 5 o'clock" on March 20, told him his car had broken down at Knobtown and asked the witness to come out with the tow truck and pick it up; that the defendant said he would be waiting there unless he had caught a ride in the meantime; that the defendant had an appointment with his father to go to Bartlesville, Oklahoma, to repossess a car; and that the witness picked up the automobile, a 1949 or 1950 Dodge at Knobtown, took it to "the shop" and it was later sold for junk. On being recalled for further cross-examination, the witness testified, among other things, that he picked up the car just east of Lone Jack.

Thomas was brought from the penitentiary for the trial and testified in substance as follows. He and another man, whose name he could not recall, committed the crime. They went to the vicinity of the service station in two cars accompanied by two girls they had met while drinking in saloons during the previous evening. All of the stolen property was put in Thomas's car. Thomas's partner in the crime got in the other car with the two girls. They had arranged to meet on 12th Street in Kansas City to divide the loot. As Thomas was driving to Kansas City, he saw a man standing beside the road with clothes on his arm. There was snow on the ground and it was cold so he stopped, picked up the man and discovered it was the defendant with whom he was acquainted. When asked where he picked up the defendant, Thomas gave this indefinite answer: "I am not very well acquainted out there, but it was a couple of miles from the place, I guess, something like that, I don't know." At the time he

testified, Thomas had convictions for car theft, forgery, bank overdraft and burglary and larceny.

◼ In testing the sufficiency of evidence in a criminal prosecution by a motion for a judgment of acquittal, the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. Strong, Mo., 339 S.W.2d 759, 764[3]; State v. Scott, Mo., 338 S.W.2d 873, 875[1]; State v. McIntosh, Mo., 333 S.W.2d 51, 60[13].

Instruction No. 5 told the jury that "there is no direct evidence of the guilt of the defendant in this case" and further instructed the jury as follows: "Before you can convict the defendant on circumstantial evidence alone, the facts and circumstances must all form a complete chain, and must all point to his guilt, and must be irreconcilable with any reasonable theory of his innocence, and before the jury can convict the defendant on circumstantial evidence alone, the circumstances must not only be consistent with his guilt and point directly thereto, but must be absolutely inconsistent with any reasonable theory of his innocence." See State v. Dilley, 336 Mo. 75, 76 S.W.2d 1085, 1087[1].

The state contends that the defendant had possession of the stolen merchandise and that this together with other evidence permits an inference of guilt and is sufficient to support the verdict and judgment of conviction. The defendant, on the other hand, asserts that the evidence was wholly insufficient to prove a possession of the kind and character required to permit an inference that he participated in the burglary and theft.

"Generally speaking, a defendant's possession of property stolen in a burglary should, to afford evidence of his guilt, be recent, that is not too remote in point of time from the crime, personal, exclusive, distinct and conscious, and unexplained. Where the character of defendant's possession is such as to fulfil these requirements, it is evidence of his guilt, connecting him with the commission of the burglary, and, in the absence of countervailing evidence, may be sufficient to sustain a conviction of burglary. * * *

"*Joint possession.* The requirement that possession of defendant be 'exclusive' in order to afford evidence of his guilt of burglary, which requirement has been considered supra this section, does not mean that the possession must necessarily be separate from all others, since an 'exclusive' possession may be the joint possession of two or more acting in concert. If possession is joint with another, there must be something else in the evidence to connect defendant with the offense; but possession by others may be sufficient if a conspiracy is shown." 12 C.J.S. Burglary § 59b, pp. 736–738.

This statement of the character of possession necessary to justify the inference of guilt embodies rules of decision pertinent to this appeal and is supported by Missouri cases. In State v. Drew, 179 Mo. 315, 78 S.W. 594, 595, it was held that the possession must be exclusive and that a constructive possession, though sufficient to create a civil liability, is not sufficient to hold a party responsible criminally since he can only be required to account for things which he actually and knowingly possessed. As supporting the exclusive possession requirement, also see State v. Belcher, 136 Mo. 135, 37 S.W. 800[1]; State v. Prunty, 276 Mo. 359, 208 S.W. 91, 94[2]; State v. Wyre, Mo., 87 S.W.2d 171, 173[1]; State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 453[6]; and State v. Oliver, 355 Mo. 173, 195 S.W.2d 484, 485[1], 486[6, 7]. That possession by others or a joint possession may be sufficient if a conspiracy or a common purpose to commit a crime is shown is apparent from the decisions of State v. Strait, Mo., 279 S.W. 109; State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, 694[4, 5]; and State v. Jordan, Mo., 235 S.W.2d 379, 382[3, 4]. The state does not contend that there was

any proof of a conspiracy or a common purpose to commit the burglary.

■ We are convinced on the record before us that the evidence is not sufficient to establish possession of the character required to justify an inference of defendant's guilt of the crimes charged. Thomas was the driver of the automobile which he had stolen and there is no showing that the defendant had any control or dominion over it. There is no evidence that the defendant made any claim to the stolen merchandise or undertook to control it or its disposition. While some of it was on the back seat, there is no evidence that he saw it prior to his arrest or, if we assume he did see it, that he knew it was stolen or that a burglary had been committed. The defendant told the arresting officers that he knew nothing about the stolen merchandise, whose it was or where it came from. Thomas, by his plea of guilty and his testimony at the trial, admitted that he was in possession of the loot. The cases relied on by the state are ones in which a possession, sufficient under the above rules, was proved by the state or admitted by the defendant. See for example, State v. Oliver, 355 Mo. 173, 195 S.W.2d 484, State v. Jordan, Mo., 235 S.W. 2d 379, and State v. Reagan, Mo., 328 S.W. 2d 26.

There is no doubt that the merchandise was recently stolen, but the defendant's presence in the automobile, without more, was not sufficient to establish his possession of the stolen property. See State v. Linders, Mo., 246 S.W. 558, 560[2]; State v. Compton, Mo.App., 297 S.W. 413, 414[1]; State v. Nelson, Mo.App., 21 S.W.2d 190 [1, 2]; State v. West, 324 Mo. 710, 24 S.W. 2d 1005, 1006; State v. Murdock, Mo.App., 27 S.W.2d 730, 732[3–5]; 9 Am.Jur., Burglary, § 76, p. 277.

■ But the state asserts there was additional evidence from which the jury could infer defendant's criminal agency in that it was shown that the crime was committed by two persons; that Thomas, defendant's companion, was one of those two persons; that the defendant when arrested was riding in the automobile used by the burglars; that the defendant was in the "immediate vicinity of the crime minutes after it was committed"; and the fact that the .32 caliber automatic pistol was found under the passenger side of the front seat connects the defendant with the automobile in a capacity other than as a mere hitchhiker.

The place of concealment of the automatic and other evidence was sufficient to permit the inference that the gun belonged to the defendant, but such fact is not inconsistent with his being a hitchhiker. If he had the gun on his person, it is reasonable to expect that he would have concealed it under the seat when about to be overhauled by the police whether he was a hitchhiker or one of the burglars. The fact that he carried a gun would be evidence that he was a law violator, but it would not justify an inference that he was one of the burglars.

The evidence is not clear how far the scene of the crime is from Highway 50 and Raytown Road, nor the time interval between the commission of the crime and defendant's arrest. Counsel in their jury arguments assume that the distance was between 12 and 14 miles and the time was 15 to 20 minutes. For present purposes, we may use these estimates. This circumstance is also highly suspicious, but again it is not wholly inconsistent with his having been picked up at the roadside when we consider, as shown by the state's evidence, that Thomas was at least partially intoxicated and lacked good judgment as shown by the way he handled the loot and needlessly invited arrest by his manner of driving. The fact that defendant was within 12 miles of the filling station minutes after the burglary alone is not sufficient. In State v. Tracy, 284 Mo. 619, 225 S.W. 1009, a bank was burglarized and the principal evidence against the defendant was stated by the court as follows, 225 S.W. loc. cit. 1010–1011: "Taking the evidence most favorable to the state, it merely shows that, very

shortly after the burglary was committed, the appellant, in company with two other men, was found three-tenths of a mile from the scene of the crime, sitting on the river bank in the darkness, near a skiff containing a quantity of burglars' tools and other articles used by such gentry in their nefarious enterprises; that appellant protested when a flash light was directed at him, leveled a rifle at one of the state's witnesses, and immediately thereafter fled." The evidence was held insufficient to sustain the conviction.

Nor do we think the fact that the defendant, when arrested, was riding in the automobile used by the burglars and being driven by one of the confessed burglars is sufficient because likewise this is not inconsistent with his being a hitchhiker. Under stronger circumstances, this court has refused to permit an inference of guilt from association alone. In State v. Belcher, 136 Mo. 135, 37 S.W. 800, the defendant was living with his family in a house where the stolen merchandise was found and was wearing some of the stolen clothing when arrested. In reversing his conviction, the court stated, 37 S.W., loc. cit. 801: "* * * it is clear that defendant was convicted because of his association with his brother, and the bad reputation of his family."

The circumstances proved create a strong suspicion that the defendant participated in the burglary and theft. But the Missouri cases uniformly hold that mere suspicion of guilt, however strong, is not sufficient to authorize a criminal conviction. See State v. Matticker, Mo., 22 S.W.2d 647, 648[2]. We cannot on this record affirm the conviction without doing violence to rules regarding the kind and character of possession of stolen property necessary to permit an inference of guilt of burglary and theft, the rules of circumstantial evidence, the presumption of innocence and the right of an accused against self incrimination. Consistent with adjudicated cases, the conviction must be set aside. See State v. Belcher, 136 Mo. 135, 37 S.W. 800; State v. Drew, 179 Mo. 315, 78 S.W. 594; State v. Gold-

feder, Mo., 242 S.W. 403; State v. Warford, 106 Mo. 55, 16 S.W. 886; State v. Matticker, Mo., 22 S.W.2d 647; State v. McMurphy, 324 Mo. 854, 25 S.W.2d 79; State v. Cooper, Mo.App., 32 S.W.2d 1098; State v. Wolff, 337 Mo. 1007, 87 S.W.2d 436; State v. Dilley, 336 Mo. 75, 76 S.W.2d 1085; State v. Swarens, 294 Mo. 139, 241 S.W. 934; State v. Tracy, 284 Mo. 619, 225 S.W. 1009.

It does not follow that we must reverse the conviction outright and discharge the defendant. Under the circumstances, the cause should be remanded in order to give the state an opportunity to produce additional evidence if it can do so. State v. Patton, Mo., 308 S.W.2d 641, 644 [7–9], and cases cited immediately above. Otherwise, the information should be dismissed.

Accordingly the judgment is reversed and the cause remanded.

All concur