## THE STATE v. DEWITT and JONES, Appellants.

**Division Two, November 21, 1905.**

1. **PRACTICE: Failure to Instruct: Objection too Late.** Where defendant does not object, at the time, to the instructions given by the court, it is too late to raise that point for the first time in the motion for new trial.

2. ——: **Improper Argument: No Exception.** The mere statement, in the motion for new trial, that an attorney made improper remarks during the argument does not prove them, and unless they are excepted to at the time, and the point is preserved in the bill of exceptions, they cannot be reviewed by the appellate court.

3. **BURGLARY AND LARCENY: No Evidence.** The evidence in this case, which was a prosecution for burglary and larceny, is examined, and it is held that there was no evidence to justify a conviction, and that the trial court should have directed an acquittal.

Appeal from Jefferson Circuit Court.—*Hon. Jos. J. Williams,* Judge.

REVERSED.

*Edgar & Berkeley* for appellants.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

The court did not err in refusing the instruction asked by defendant in the nature of a demurrer to the evidence. State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496.

GANTT, J.—At the January term of the circuit court of Jefferson county, the grand jury of said county in open court presented the following indictment against the defendant:

"The grand jurors for the State of Missouri, within and for the body of the county of Jefferson, now

here in court duly impaneled, charged and sworn, upon their oath present that Ed Lewis, Pete Williams, Harry Jones and F. B. DeWitt, on the 24th day of November, 1904, at the county of Jefferson, in the State of Missouri, did then and there unlawfully, feloniously and burglariously break into and enter into the store of the Cunningham & Hamel Mercantile Company, a corporation, there situate, the same being a building in which divers goods, wares, merchandise and other valuable things were then and there kept for sale and deposited, with intent the goods, wares, merchandise and other valuable things in said store then and there being, then and there feloniously and burglariously to steal, take and carry away; and one carving set and forty-eight pocket knives of the value of forty dollars, of the personal goods and property of the Cunningham & Hamel Mercantile Company, a corporation, then and there in said store being found, did then and there feloniously and burglariously steal, take and carry away, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The defendants Lewis and Williams named in the indictment entered a plea of guilty, the defendants Jones and DeWitt, who were granted a severance, pleaded not guilty. At the same term of the court these two defendants were put upon their trial and convicted of burglary and larceny, and from that conviction they appeal to this court.

The verdict was in the following words: "We, the jury, find the defendants guilty as they stand charged in the indictment, and assess their punishment for the burglary at —— years in the penitentiary, and for the larceny at two years in the penitentiary."

Within three days after the rendition of said verdict, the defendants filed their joint motion for a new trial, assigning various grounds which will be noted in the course of the opinion. The motion for new trial was

overruled and the defendants were thereupon sentenced to the penitentiary for a period of two years from the 25th of November, 1904, for the larceny, and no sentence imposed for the crime of burglary. At the close of all the evidence the defendants moved the court to instruct the jury that under the indictment and evidence they would find the defendants not guilty, which instruction the court refused, and to its refusal the defendants by their counsel duly excepted; thereupon the court gave its instructions to the jury, to the giving of which no exceptions were taken or saved at the time, nor did the defendants except to the failure of the court to instruct upon all the law applicable to the case. Thereupon the defendants prayed the court to give the following two instructions:

"The court instructs you that the defendants are presumed to be innocent of the offense charged against them, which presumption attends them throughout the trial, and that the burden rests on the State to overthrow this presumption by competent proof, and to prove them guilty beyond a reasonable doubt; therefore, if after a full and fair consideration of all the evidence, you have a reasonable doubt of the guilt of the defendants or either of them, you will give them the benefit of such doubt, and acquit them."

"The court instructs the jury that before you can convict the defendants, or either of them, on circumstantial evidence alone, the circumstances tending to show their guilt, or the guilt of either of them, should be established beyond a reasonable doubt by the evidence, and be so consistent, the one with the other, and point so strongly to the guilt of the defendants, as to exclude every other reasonable hypothesis except that of guilt." Which instructions the court refused to give and to the refusal of which counsel for the defendants then and there duly excepted. No exceptions were taken to the ruling of the court in admitting or excluding evidence.

The evidence for the State was circumstantial and tended to prove the following facts: The Cunningham & Hamel Mercantile Company was at the date of the alleged burglary and larceny, November 24, 1904, and now is a corporation, doing a mercantile business in the city of DeSoto, Jefferson county, Missouri. About 6:30 o'clock in the evening of November 24, 1904, John Johnson, a helper in the Cunningham & Hamel store, saw the defendants standing near the corner of said store. There were two other men with the defendants at that time whom the witness afterwards saw on the inside of said store, and again after they were arrested. Johnson testified that he saw the defendants about eight o'clock that evening in front of the south window of said store, and went across the street where they were standing and heard a noise in the cellar of the Cunningham & Hamel store, and just at that time DeWitt, one of the defendants, walked up to the front door of the store and struck or fell against it and the other defendant, Harry Jones, commenced talking to Johnson and tried to sell him a ring; that while Johnson and Jones were thus talking, DeWitt was walking back and forth on the sidewalk looking into the store; that then DeWitt and Jones went away a short distance together and talked and finally walked away a short distance from the store, and Johnson heard something fall in the store and looked and saw a person inside thereof.

William Welch testified that he saw the defendant, DeWitt, about two o'clock in the afternoon of that day and again at 7:30 talking to another man near the Cunningham & Hamel store. Robert Jenkins testified that DeWitt took lunch by himself in his (Jenkins') restaurant that day about one o'clock, on the 24th of November, and that he saw him again about seven o'clock that evening; he saw him again standing in an alley between two buildings with three other men whom he did not know.

W. H. Cunningham testified that he was a member

of the Cunningham & Hamel Mercantile Company; that the said store was broken into on the 24th of November, 1904, and a lot of pocket knives and carving sets were scattered over the floor upstairs and about thirty dollars worth taken down into the cellar; the articles found in the cellar were the property of the Cunningham & Hamel Mercantile Company. He testified, on cross-examination, that he did not know that the two men on trial were connected with the burglary.

The defendants were witnesses in their own behalf. DeWitt testified that his home was in Minneapolis, Minnesota, and that he left there about the last day of October as a nurse or helper to his cousin who was going to Hot Springs, Arkansas; that they came directly to St. Louis and remained in St. Louis from Tuesday evening until the following Saturday to visit the World's Fair; on Saturday they went directly to Hot Springs, and he remained there until the 19th of November; he then left, coming north on a freight train, because he did not have money enough to ride on the passenger. He stopped over at various places and finally reached De-Soto; he says he wandered around the streets until he found the restaurant of witness Jenkins; he got a cold dinner there and then walked around the street; he had never met the other defendants in this case until he met them in DeSoto. Jones, the other defendant, took him for a railroad man, and asked if this train was going out right away; he had never seen him before; this was in the evening just before dark; he told Jones he was on his way north, and they commenced to talk together and walked around the streets awhile; he and Jones remained together the rest of that evening until they were arrested; they had nothing whatever to do with the burglary. He heard the testimony of witness Johnson, and stated that he met Johnson and happened to say that he had some rings, and he told Jones he was trying to sell one of the rings, and Jones said, "I will try and sell one to this negro here," and that was this fellow

Johnson; he remembered Jones going up to Johnson, and witness walked back and forth waiting for him to get through talking to him. During the evening he met the two men Lewis and Williams around the corner from the German American bank. Witness had a bottle of whiskey, and Williams and Lewis walked up toward witness and Jones and one of them asked witness if he could give him the price of something to eat, and he told them he did not have any money but here was something to drink. He had never seen either of them before and had no conversation with them after that; he next saw them after they were all arrested and put in the police station about nine o'clock. When he was arrested he was walking towards St. Louis, made no effort to escape from the officer when he arrested him, and did not know a burglary had been committed. Witness's business was mostly farming and working in sawmills.

The defendant Jones testified that his home was in Augusta, Wisconsin; that he reached DeSoto about five o'clock in the evening that the burglary was committed; he came from Little Rock, Arkansas; had been working on a farm about a mile out of the city; he came on a freight train, had no money to pay railroad fare. He had never met DeWitt until he met him in the depot at DeSoto, when he took him for a railroad man and asked when there was a train going out. DeWitt had a bottle and gave him a drink, and then they went up on the street about five o'clock. No one else was with him but DeWitt; after they had come around the corner of the German American bank the other two defendants, Lewis and Williams, came up to them and asked the price of something to eat, and DeWitt told them he had nothing to give them except a drink; there was about half a pint left in the bottle. He and DeWitt then went up on Main street and he (Jones) was trying to sell some rings. DeWitt walked away to give him an opportunity to make the sale. He had nothing to do with the burg-

lary of Cunningham & Hamel's store, made no agreement with anybody to burglarize Cunningham & Hamel's store; that he never saw Williams and Lewis, the two defendants that pleaded guilty, except for the one time when they asked for money to get something to eat. Peter Williams, one of the defendants who pleaded guilty, testified that neither DeWitt nor Jones had anything to do with the committing of the burglary; that he and Lewis did it themselves. He fully corroborated the testimony of the defendants Jones and DeWitt as to his acquaintance with them; that he never saw them before that evening and then only for a minute or so, and that there was no agreement between them and himself and Lewis to burglarize the store, nothing said about it to them, they had no knowledge of it. Ed Lewis, the other defendant, also testified that Jones and DeWitt had nothing to do with the burglary, nor were they connected with it in any manner.

In rebuttal, the State introduced a witness by the name of Haverstick. He had been serving a term in jail for stealing a shotgun when the defendants and Williams and Lewis were arrested and placed in jail on this charge. He testified that after these parties were in jail two or three days, he woke one night and heard these two defendants saying to Williams that there was no use to have all in this trouble, and the other two said they would make it all right, and Jones and DeWitt told Williams where they put the gun, and when witness got out of jail he found the pistol at the place mentioned by them.

I. There are various errors assigned for the reversal of the judgment in this case, among others that the instructions did not cover all the points of law arising upon the evidence and that the instruction on circumstantial evidence was not sufficient. As to these it is only necessary to say that the defendants did not object to the instructions given by the court, and it is too late

to raise that point for the first time in the motion for new trial. The instruction on circumstantial evidence was a correct expression of the law on that subject and affords no ground for reversal. Improper conduct on the part of the prosecuting attorney in the argument of the case was one of the grounds urged for a new trial, but the matters complained of in this respect are not set out in the bill of exceptions, and the mere statement of them in the motion for new trial do not prove them, and hence they cannot be reviewed by this court; moreover, the record fails to show that these remarks were complained of at the time they were made; therefore, they must be considered waived.

The most serious question arising on this record is the failure of the court to direct an acquittal because of the insufficiency of the evidence to support a conviction. It is well-settled law in this State that if there is substantial evidence tending to show the defendants guilty, this court will not weigh the sufficiency of the testimony to support the verdict. [State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496.]

It is, however, equally well-settled law in this State that this court will consider the whole evidence to ascertain whether a verdict is in fact founded upon any substantial evidence to justify a conviction. [State v. Crabtree, 170 Mo. 642.]

Is the evidence sufficient in this case to establish the guilt of defendants? At the outset it may be remarked that it was wholly circumstantial; indeed, it is established by the State affirmatively that these defendants were on the street at the time the burglary was committed, and were not in the building when Lewis and Williams were committing the larceny. The sole ground upon which the case was submitted to the jury was that they were present, aiding and assisting Lewis and Williams in breaking into and entering the store. The testimony tending to show that they were accessories consists of the testimony of Johnson, a helper at the store,

and of Jenkins, who kept a restaurant in the city of De-Soto. Johnson testified that about 6:30 of the evening on which the store was burglarized, he saw these two defendants standing near the corner of the Cunningham & Hamel store, and that Lewis and Williams were with them at that time; that about eight o'clock of the same evening he saw these defendants standing on the sidewalk in front of the south window of said store and went across the street to where they were standing and heard a noise in the cellar of the store; that about this time DeWitt, one of the defendants, walked up to the front door of the store and struck or fell against it and that the other defendant, Jones, began a conversation with him, Johnson, trying to sell him a ring; that while Johnson and Jones were talking, DeWitt walked up and down on the sidewalk and looked into the store; that during this time DeWitt, when passing the store, was smoking a cigarette, and blew the smoke against the front window; that then DeWitt and Jones walked off talking together and went some distance from the store; that he, Johnson, heard something fall in the store and looked and saw a person inside which afterwards proved to be either Lewis or Williams.

Robert Jenkins testified that DeWitt took lunch by himself in his, Jenkins', restaurant that day about one o'clock, and about seven o'clock that evening he saw him standing in an alley between two buildings with three other men whom he did not know. It was established by the evidence of Lewis and Williams that they alone committed the burglary and larceny, and that they had never met the defendants except for a minute or so that evening when Williams asked DeWitt to give him enough money to buy a meal; that he had never seen either of the defendants before and did not know them. William Welch testified that he saw DeWitt about 7:30 that evening, talking to another man near the Cunningham & Hamel store; this, evidently, was

about the time that Johnson testified that he saw De-Witt and Jones together at that place.

It is unquestionably the law that crime may be established by circumstantial evidence; otherwise, society would be at the mercy of the criminal classes; but it is also uniformly ruled that circumstantial evidence must go beyond mere suspicion and conjecture, and the circumstances tending to show guilt must be consistent the one with the other and point so strongly to the guilt of the defendants as to exclude every other reasonable hypothesis except that of guilt. Can it reasonably be said that the naked fact that these two defendants were standing upon a public sidewalk in front of the store talking to Johnson while two other parties were burglarizing the store, was sufficient to show their complicity in the crime merely from the fact that a short time prior thereto they had met Lewis and Williams for a minute or so and had given them a drink? There was no evidence on the part of the State showing that these four tramps had ever known each other prior to that evening, and that for the defendants utterly disproved any previous acquaintance or association.

It seems to us clearly that it was not. It was entirely consistent with their innocence that they might have met the other two tramps, Lewis and Williams, and that the two latter should have solicited assistance from them to get a meal and have received instead a drink which DeWitt gave them, without Lewis and Williams having imparted to them their intention to burglarize the store or without having sought their assistance to commit the crime. Certainly the subsequent facts developed by the State showed no overt act on the part of these two defendants looking to the commission of the crime. There is not a semblance of evidence tending to prove that they sought to lead Johnson away from the front of the store and thus prevent his hearing or seeing what Lewis and Williams were doing in the store at the time; so that the conviction must stand, if at all, up-

State v. DeWitt and Jones.

on the bare fact that during the afternoon they had met Lewis and Williams who, like themselves, were tramps without regular employment. It is entirely consistent with their innocence that they might have given Lewis and Williams the drink of whiskey without having entered into any conspiracy with them to commit a crime. Indeed, it is utterly improbable that these two defendants, thus unexpectedly meeting two other tramps, should, in the minute or two in which they were together, at once have entered into a conspiracy to rob a building. It must be borne in mind that this is a criminal prosecution for a felony, and it devolves upon the State to establish the guilt of these defendants beyond a reasonable doubt, and the law presumes their innocence; and to hold these defendants guilty upon the facts shown, which are entirely consistent with their innocence of the crime, would be to overturn the settled principles of criminal law.

When the State closed its case in chief, it is clear that the instruction asked by the defendants directing the jury to acquit them should have been given at that time. There was absolutely no evidence that a burglary or larceny had been committed, and there was not a particle of evidence which could have justified a conviction of the defendants, but the court having overruled this request of their counsel, the defendants then testified in their own behalf, and also offered in evidence the testimony of Lewis and Williams, who had been jointly indicted with them, and the latter confessed to the commission of the burglary and larceny by themselves alone. After a careful consideration of all the testimony offered by the State and the defendants, we are of the opinion that there is no substantial evidence to justify the conviction of the defendants. We are impressed with the view that the jury did not calmly weigh the facts in evidence, but permitted the fact that these two defendants were tramps, without any lawful occupation, to hurry them to the conclusion that they were

guilty on account of their association with the other tramps who were confessedly so; but the law of this State accords them the same protection and the same presumption of innocence when charged with crime that it does to any other citizen, and the same amount of proof is essential to deprive them of their liberty and incarcerate them in the penitentiary that is required on the trial of any other person. Prone as we are to yield to the verdict of the jury, especially when it has received the approval of the circuit court, we are constrained to hold that the verdict in this case is without substantial evidence to support it, and accordingly the judgment of the circuit court is reversed and the prisoners discharged.

All concur.