THE STATE v. HENRY COUNTS, Appellant.

**Division Two, May 23, 1911.**

CIRCUMSTANTIAL EVIDENCE: Consistent With Defendant's Innocence. Where the evidence is wholly circumstantial, and all the facts testified to are consistent with defendant's innocence, the court shoud sustain a demurrer to the State's case. In this case there was no substantial evidence of defendant's guilt of stealing the hogs.

Appeal, from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED.

*Orchard & Cunningham* and *Arthur T. Brewster* for appellant.

(1) The court erred in refusing to give defendant's peremptory instruction offered at the close of the evidence for both State and defendant. There is no evidence that the hogs killed and carried away by the defendant were the property of the prosecuting witness. Criminal intent is the principal element of the offense of larceny, whether the offense be grand or petit larceny. It is often difficult to draw the line between theft and mere unlawful conversion. If one takes property of another and converts it to his own use, but takes it in good faith under color of a rightful claim, he is not a thief, but an honest wrongdoer, and his liability is civil and not criminal. State v. Claybaugh, 138 Mo. App. 364; State v. Zehnder, 228 Mo. 326; Witt v. State, 9 Mo. 672; State v. Matthews, 20 Mo. 57; State v. Weatherman, 202 Mo. 9; State v. Gray, 37 Mo. 463; State v. Rutherford, 152 Mo. 124; State v. Little, 170 Mo. 13.

FERRISS, J.—On January 15, 1910, the prosecuting attorney of Shannon county filed an information in the circuit court of said county charging the defendant, together with John, Tucker and Arvy Counts, with feloniously stealing, taking and carrying away four hogs, the property of J. C. Ferguson. Upon application of the defendant, a severance was granted, and he was tried separately, found guilty as charged, and sentenced to two years in the penitentiary.

The State introduced evidence tending to show that J. C. Ferguson, the prosecuting witness, owned ten hogs which he allowed to run at large in the woods, not far from where defendant's father resided. Ferguson missed five of his hogs—a reddish sow, weighing about 150 pounds, and four younger hogs, one of which was a boar. Excepting the sow, the hogs were all marked in the ear. Some boys sent by Ferguson to look for the missing animals reported to him that some hogs had been killed near a deserted cabin. Ferguson went to the place mentioned and found there the entrails of four hogs, also hogs' hair which looked like that of his hogs. Upon being asked to describe the four hogs which the defendant was charged with stealing, he answered, "I couldn't tell you." He further testified that he did not know who got or killed his hogs.

John Dixon, a witness for the State, testified that he saw, near the cabin referred to, the entrails of four hogs, and some yellow, white and black hogs' hair; that he could not identify the hair as that of Ferguson's hogs, and that defendant and other people had hogs running in that immediate neighborhood.

W. E. Barton, another witness for the State, testified that in January, 1910, he was visiting at the home of Riley Counts, defendant's father. While there the defendant and John and Arvy Counts told him that they were going to hunt for and kill the defendant's hogs. They left the house on Friday and returned the

following Monday. Next morning the witness saw part of a dead hog sticking out of a wagon near the house. Witness said to Arvy Counts, "I thought you didn't get anything while you were over there," to which the other replied, "It is best to keep our mouths shut." These statements were not made in the presence and hearing of the defendant. Riley Counts purchased a killed and dressed hog from the defendant for five dollars. On the head of the hog witness noticed some sandy-colored hair. A portion of this hog was afterwards cooked and witness ate of it. The meat smelled strong which indicated to the witness that the animal was a boar.

The sheriff who arrested defendant testified that the defendant first told him that he killed but three hogs, and afterwards, upon being questioned, stated that he killed a fourth hog, the hair of which was of a sandy color, and that defendant said the hogs killed were all his own.

Defendant testified that he had been living in Reynolds county for about four months; that before going to that county he owned forty-five hogs, six of which he sold to Carroll Counts. He returned to Shannon county to kill some of the hogs he left there, stopped at his father's house, and hired John Counts and his brother, Avery, to go with and assist him in hunting for and killing his hogs. They found and killed five hogs, only one of which was marked on the ear. One was a boar with red and black hair, the hair on the others being mostly black. The hogs were wild and were hunted with dogs and guns. Twenty-one shots were fired before the hogs were killed. The killing was done about noon on Saturday. Defendant and his assistants cleaned and dressed the hogs and put them on the roof of the cabin, where they remained exposed until Monday morning, when they were loaded on defendant's wagon and hauled to his father's house. Defendant sold one of these dressed hogs, the boar,

to his father, and took the others to Reynolds county. He stated that there was no effort made to conceal the killing of the hogs, and that the shooting was done within two hundred yards of a road.

Irb. Williams testified for defendant that he knew defendant owned ten or twelve hogs the preceding October; and that he sold six of them to Carroll Counts. This testimony was corroborated by the said Counts, who also testified that defendant engaged to sell him twenty-five hogs, that he brought him fifteen or sixteen of these, but did not bring ten others which he promised to sell him. Another witness or two testified to the fact that defendant owned some hogs.

The evidence of some of defendant's witnesses was to some extent impeached by two witnesses introduced by the State in rebuttal.

At the close of the State's case defendant requested an instruction in the nature of a demurrer to the evidence, which was refused, defendant excepting.

The peremptory instruction asked by defendant at the close of the State's evidence should have been given. The evidence is wholly circumstantial, and all the facts testified to are consistent with defendant's innocence. The judgment is reversed, and the defendant discharged.

*Kennish, P. J.,* and *Brown, J.,* concur.