## THE STATE v. WORTH RUTLEDGE, Appellant.

### Division Two, June 5, 1924.

**BURGLARY:** Circumstantial Evidence: Consistency: Sufficiency: Conjecture. In this case the evidence that defendant burglarizes a drug store is wholly circumstantial, and all the facts to which any witness testified are consistent with his innocence, and no substantial evidence of his guilt was produced, and the verdict of guilty rests upon mere conjecture, and the judgment is reversed, and defendant discharged.

Headnote: **Burglary,** 9 C. J. sec. 132.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*Mayes & Gossom* and *A. Sloan Oliver* for appellant.

(1)  Where the evidence is wholly circumstantial, and all the facts testified to are consistent with defendant's innocence, the court should sustain a demurrer to the State's case. State v. Counts, 234 Mo. 580; State v. DeWitt, 191 Mo. 51; State v. Madison, 177 S. W. 347; State v. Goldstein, 225 S. W. 911; State v. Ferrell, 248 S. W. 979.  (2)  The rule sometimes stated that the Supreme Court will not weigh the evidence in a law case, that it is for the jury to weigh the evidence, is too general.  The true rule is that where there is a conflict between the material testimony, the appellate court will not undertake to decide which is of the greater probative force, because it is the exclusive province of the jury to pass upon the credibility of witnesses; but where the appellate court finds upon an analysis of the testimony, which it must needs make in every case, that there is an absence of substantial evidence to convict, it becomes the exclusive duty of the court to reverse the judgment. State v. Bass, 251 Mo. 107.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* Assistant Attorney-General, for respondent.

The evidence is sufficient to sustain the verdict.  The weight and sufficiency of the evidence are for the triers of fact and not for this court unless there is a total failure of evidence.  State v. Carr, 146 Mo. 1; State v. Turner, 106 Mo. 272, 278; State v. Peebles, 178 Mo. 475, 486; State v. Affronti, 292 Mo. 53.

HIGBEE, C.—The information, filed July 3, 1923, charges the defendant with burglary and larceny, in that

he broke and entered into the drug store of P. H. Cooper in the village of Cooter, in Pemiscot County, on Sunday, March 11, 1923, and stole narcotics, jewelry, cutlery and money, all of the value of $358. Tried on July 18, 1923, defendant was found guilty of burglary in the second degree and sentenced to the penitentiary for a term of five years. The chief assignment of error is that there was no substantial evidence to warrant the submission of the case to the jury.

At about seven o'clock on the said Sunday evening, a heavy rainstorm visited the village of Cooter, which lasted for thirty or forty minutes. Several boys, who had found shelter under a shed or store porch across the street from the drug store, through the incessant flashes of lightning, saw the defendant coming hurriedly across the street from around the corner of Cooper's drug store, and run into Chandler's restaurant. In about a minute he returned and they saw him go through a gate into an enclosure at the rear of the drug store. He returned through the gate in two or three minutes. About the time the storm abated, the defendant was seen coming "the way he generally always came from home" across the street to the restaurant. They saw nothing in his hands or pockets, nor did they observe that his hand or wrist was bleeding. There was testimony that when defendant went to the restaurant the second time, he was somewhat intoxicated and called for a sandwich. Mrs. Chandler slammed or closed the door in his face. He seemed to be angered, and broke a window pane in the restaurant with his fist. The broken glass cut and partially severed an artery in his wrist, which bled profusely. He went at once to Dr. Cooper's office, in the drug store building, and had the injury treated. Several days later, Dr. Cooper put the defendant under the influence of ether and tied the artery. While still under the influence of the anaesthetic, Dr. Cooper asked defendant if he had robbed the store. Defendant replied he had not.

As soon as the storm had passed, P. H. Cooper, the druggist, went to the drug store where he found goods

scattered on the floor and two panes of glass broken in the window in the rear end of the store. He saw no blood about the window or elsewhere in the store. He checked up his goods and found $125 worth of narcotics, kept in bottles, $225 worth of jewerly and $2 or $3 in money, gone. None of the stolen property was ever traced to or found in the defendant's possession. Nor was it shown that defendant knew where the narcotics or other stolen property were kept in the store. Indeed, by the verdict of the jury, he was acquitted of the charge of larceny. Two or three weeks later some children found the stolen narcotics in a sack in a ditch at some distance from the house of defendant's father, where defendant lived, and they were restored to and identified by Mr. Cooper.

The defendant testified: After supper I was with the boys in town. We ran out of liquor and they made a donation and I started out to get some. I went to Frank Reed's and he wasn't at home. I went back by the drug store and went in behind and got a bottle to put the liquor in. I found Reed in Chandler's restaurant, but he said he had no liquor. We ran around to Dick Oakley's. It was raining, and I stepped inside his car house until it was nearly over, and then went home. I heard the boys talking and laughing in town and when I hit the sidewalk and when Frank Cox came up he said he had no liquor, and I handed him the money back he gave me to get the liquor. I started to go in the restaurant and Sid Chandler's wife shoved the door in my face. I tried it again, and she shut the door again, and I hauled off and hit the window with my fist. I noticed my arm was bleeding, and Homer Waters and Frank Cox taken me by the arm and walked me over to the doctor's office, and he dressed my arm, and I went to the restaurant and got a sandwich, and then went on home. I did not break into Cooper's store or steal or take away anything from there. I don't know who did it.

The defendant's statement about getting his arm cut was corroborated by several witnesses, and it was ad-

mitted to be correct by the prosecution at the trial. His statement that he went home about the time the rain ceased was corroborated by his father. In rebuttal, several witnesses testified that the defendant's general reputation for morality was bad.

In this case, as was said in State v. Counts, 234 Mo. 580, 583, 137 S. W. 871, "the evidence is wholly circumstantial and all the facts testified to are consistent with defendant's innocence."

In State v. DeWitt, 191 Mo. 51, 60, it is said: "It is unquestionably the law that crime may be established by circumstantial evidence; otherwise, society would be at the mercy of the criminal classes; but it is also uniformly ruled that circumstantial evidence must go beyond mere suspicion and conjecture, and the circumstances tending to show guilt must be consistent the one with the other and point so strongly to the guilt of the defendants as to exclude every other reasonable hypothesis except that of guilt. Can it reasonably be said that the naked fact that these two defendants were standing upon a public sidewalk in front of the store talking to Johnson while two other parties were burglarizing the store, was sufficient to show their complicity in the crime merely from the fact that a short time prior thereto they had met Lewis and Williams for a minute or so and had given them a drink? There was no evidence on the part of the State showing that these four tramps had ever known each other prior to that evening, and that for the defendants utterly disproved any previous acquaintance or association." [State v. Casey, 247 S. W. 114 (2); State v. Bowman, 243 S. W. 110 (4).]

Again, on page 61 it is said: "We are impressed with the view that the jury did not calmly weigh the facts in evidence, but permitted the fact that these two defendants were tramps, without any lawful occupation, to hurry them to the conclusion that they were guilty on account of their association with the other tramps who were confessedly so; but the law of this State accords them the same protection and the same presumption of inno-

cence when charged with crime that it does to any other citizen, and the same amount of proof is essential to deprive them of their liberty and incarcerate them in the penitentiary that is required on the trial of any other person. Prone as we are to yield to the verdict of the jury, especially when it has received the approval of the circuit court, we are constrained to hold that the verdict in this case is without substantial evidence to support it, and accordingly the judgment of the circuit court is reversed and the prisoner discharged.'' [See, also, State v. Goldstein, 225 S. W. (Mo.) 911, 913 (2), and State v. Madison, 177 S. W. (Mo.) 347.]

The store was closed by Cooper's clerk at about seven p. m., when the storm struck the village. The burglary was committed between that time and the time when Cooper returned to the store at about 7:45 or 7:50 p. m. The fact that the defendant was seen going into the enclosure at the rear of the building is a circumstance that is entirely consistent with his innocence. If the defendant had fled or there had been other corroborating circumstances, as in the cases cited by the State, the conviction might be sustained. But mere suspicion, however grave, is not of itself sufficient to support a conviction. [State v. Ferrell, 248 S. W. (Mo. App.) 979.]

The judgment is reversed and the defendant discharged. *Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is adopted as the opinion of the court. All of the judges concur, but *White, J.,* is of the opinion that the cause should be remanded.