**STATE of Missouri, Respondent,**

v.

**Charles Larry ALLEN, Appellant.**

**No. 52440.**

Supreme Court of Missouri,
Division No. 1.

Oct. 9, 1967.

Motion for Reconsideration and Modification

Without Rehearing Denied Nov. 13, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, A. Michael Sullivan, Special Asst. Atty. Gen., Clayton, for respondent.

Lovell W. George, Clayton, for appellant.

HOUSER, Commissioner.

Eighteen-year-old Charles Larry Allen, convicted by a jury of second degree burglary and stealing and sentenced to consecutive 3 and 2-year terms in the custody of the department of corrections, has appealed. Represented at the trial and on this appeal by counsel of his own choosing, appellant makes two points: First, that the evidence is not sufficient to sustain a verdict of second degree burglary and stealing; second, that the prosecuting attorney made an inflammatory and prejudicial argument to the jury.

On the night of August 2–3, 1965 a sporting goods store located on Manchester Road in the City of Rockhill was broken into. Guns, rifles and knives valued at $700 were removed therefrom. There are front and rear entrances. The rear entrance consists of combination wood and glass twin or double doors, covered on the outside by screen doors. The screen doors were secured by hooks. The twin doors were secured by two inside bolts, one belt high, the other about six feet up. There was a crack in the glass in the left-hand door (as you face the doors from the outside) caused by the wind slamming the door shut. It had been taped over with Scotch tape. The crack was 18 inches long. Semicircular in shape, it ranged up from the base of the glass pane in a curving line to a point on the side of the door frame where the pane was set in the molding. The section of glass outlined by the crack constituted the right-hand area of the glass pane of the left door. The glass panes were held in place in the doors by a half-

inch wooden molding. There was a "molding line" on the long perpendicular side of the somewhat triangular section of the pane of glass.

On the night of August 2 the proprietor of the store checked the doors and put the bolts in place. The next morning he found the back door standing open, some shells and gun cases scattered around and a couple of little pieces of glass on the floor inside the building, and a hole in the back screen door that was not there the night before; a hole "like you'd stick your hand through." The elongated, semicircular-shaped piece of glass had been removed from the left rear door. It appeared that the entrant had burst through the screen, unlatched it, removed the piece of glass and unbolted the door by reaching through the opening created by the removal of the glass.

The proprietor called the police department. Sergeant Bell, an experienced officer, made an examination of the premises. On the interior he found the disarray above described. He took the empty cardboard boxes and some boxes of shotgun shells to the police station for fingerprints but found nothing legible, "only smudges." Outside the building he found the displaced section of the left rear door glass, leaning from the ground against the concrete steps which lead from the porch at the rear of the store. Fingerprints on this section of glass were "quite obvious." The sergeant put transparent tape over them and the section of glass was taken to the Identification Bureau of the St. Louis County Police Department for processing. Two detectives, both experienced in the art of fingerprinting, one of them in charge of the identification bureau, testified with respect to the fingerprints on the section of glass. A fingerprint examination was conducted. Several prints were lifted and put on a white background and photographed. One print which could not be lifted was photographed on the glass. The photographs were enlarged. Appellant lived with his grandmother in the vicinity. There is no evidence that appellant had ever been in the store prior to Au-

gust 2, 1965. Appellant was taken into custody as a suspect and his fingerprints were taken. His fingerprint card, made available to the identification bureau, was photographed and enlarged. The enlarged photographs from the glass and the enlarged photograph of appellant's fingerprint card were paired on a comparison chart. One print lifted off the glass was a partial latent fingerprint impression, which the expert testified was made along the edge of the section of glass. The experts found numerous points of identification—abutments, scars, ending ridges, etc.—on the basis of which they expressed their opinions that the fingerprints on the glass were identical with and belonged to the same person who made the prints on the card. There were 15 points of identification on one pair of prints. There was a line on the glass under one of the prints. This was the "molding line" where the molding held the pane in the frame. A latent fingerprint lifted off the glass was found to compare with the right middle finger on the chart. At one point skin was missing as a result of an opening in the skin which had not grown over. That pattern was in exactly the same spot on the card print. They were identical. Two prints, from the right index and right middle fingers, were found on one side of the glass, and a right thumbprint on the other side. These were compared with appellant's fingerprints on the card and 12 points of identification were noted. The officers positively testified that the prints on the glass were one and the same—identical with—the prints on the card. The card and charts were offered in evidence.

Appellant took the stand and testified that he was walking through the area behind the sporting goods shop on the night in question; that he had left his sister's house in St. Louis sometime between 10 and 11 p. m. and caught a bus to the Maplewood loop, from whence he walked home; that when he passed the corner of the store building his attention was attracted by the fact that the door was open or ajar, and it seemed like there was a little light flash-

ing in the front of the store. The door was not wholly open but was "cracked." Curious, he mounted the back porch steps, put his hands on the doors, "leaned in," looked inside and saw only a flash of the light coming from the front. He testified that he did not go inside the store. He "figured the man might be in there or something wrong," so he turned around, went down the steps, went home and went to bed. He said that in leaning over and "peeking in" he held onto one door with his left hand and rested his extended right arm and hand on the other (closed) door; that he saw no open place where glass had been broken, but was not looking for glass; that he had to touch the glass since he put his hand on the door; that if he hit the glass with his left thumb and fingers the prints should be on it, and his right palm print should be on the glass part of the other door. He could not say whether there was glass in either door because he "didn't exactly examine it."

It was the state's theory that the only way one could get his fingerprints on the part of the glass covered by the molding would be to "wiggle" the glass out of the frame and then touch it after the glass was removed and out from behind the molding, and that the position of the prints on the glass proves beyond doubt that appellant took the glass out and made the prints thereafter. Appellant argues that this is unlikely; that the state's evidence is puzzling and at most creates a suspicion that appellant was implicated, or a probability of guilt, and that circumstantial evidence must go beyond mere suspicion and conjecture. Appellant claims there is no chain of evidence here, but merely a single link, a single circumstance.

■ Where the evidence of defendant's agency in connection with the crime charged is entirely circumstantial, "the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence." State v. Walker, Mo.Sup., 365 S.W.2d 597, 601 [5]; State v. Stoner, Mo.Sup., 395 S.W.2d 192. Ordinarily evidence of a single, isolated fact, however incriminating, is not sufficient to support a conviction. State v. Schrum, 347 Mo. 1060, 152 S.W.2d 17; 52 C.J.S. Larceny § 137 c. (1). Furthermore, the mere presence of the accused at the scene of a crime and an opportunity on his part to have committed the offense is not sufficient circumstantial evidence to justify conviction. State v. Castaldi, Mo. Sup., 386 S.W.2d 392; State v. Whitaker, Mo.Sup., 275 S.W.2d 322 [4]. The mere fact that defendant was at the rear of the building at or near the time the building was burglarized is a circumstance entirely consistent with his innocence, and is insufficient to support a conviction in the absence of proof of flight or "other corroborating circumstances." State v. Rutledge, 304 Mo. 32, 262 S.W. 718. Proof, however, that fingerprints found in the place where a crime is committed, "under such circumstances that they could only have been impressed at the time the crime was committed, correspond to those of the accused, may be sufficient proof of identity to sustain a conviction." Anno: Evidence —Finger, Palm, or Footprint, 28 A.L.R.2d 1115, §§ 28, 29.

■ The evidence in this case shows more than mere presence of defendant at the scene of the crime and opportunity to commit the crime. It connects this defendant with the removal of the glass from the door through which the burglar entered. There is the admitted fact that defendant was at the rear door of the shop that night, interested in what was within the building. The glass with the fingerprints thereon, and the enlarged prints from the glass and from defendant's fingerprint card, with the aid of the expert testimony, provided the jury with proof from which it could be found beyond a reasonable doubt that de-

fendant removed the glass from the door. The fingerprints and thumbprint were found at the edge of the piece of glass which had been removed from the door, at and on a portion of the glass which had been covered by the molding, so positioned that it would have been physically impossible to have left the prints there while the glass yet remained in position as a part of the door. The evidence dispels the possibility that defendant left these prints on the glass after the commission of the burglary by another. There was nothing to indicate that these particular fingerprints, at that particular place on the glass, were placed there innocently. There was no attempt to show that the fingerprints were not those of the defendant. That the person who removed the glass could have gained entrance to the building by reaching through the hole and unbolting the door and that whoever entered the building took or participated in the taking of the property that was missing the next morning, follows so reasonably and surely as to exclude any other reasonable hypothesis. The jury was justified in concluding that defendant was the guilty party and that he committed the crimes beyond a reasonable doubt.

In an almost identical situation the Court of Criminal Appeals of Texas said: "The presence of appellant's finger print on the portion of the glass covered by the molding is inconsistent with his innocence. It could not have been placed there while the pane was in the door and the molding in place. The evidence was sufficient to authorize the jury's finding. This court has no right to disturb their verdict." In his motion for rehearing appellant contended that the evidence of identity of the fingerprint was not sufficient to sustain the verdict. The court answered: "In determining this question we think the first requisite is to show a reasonable doubt that the finger print found on the glass was placed there by the burglar at the time of the burglary, excluding the hypothesis that it might have been innocently imprinted on the glass at a time prior to or subsequent to the burglary. On this point we think the evidence leaves no room for doubt. The glass was held in the door by a molding. Along the glass at the edge of the molding was a showing of paint. The finger print found was on the glass at a point which had been covered by the the molding, hence impossible to find its way there until the molding was removed. Therefore it seems conclusive that when the glass was removed in order to effect an entrance to the building the burglar at that time left his finger print on the glass after removing the molding. The evidence excludes the idea that appellant ever handled the glass subsequent to the burglary." Grice v. State, 142 Tex.Cr.R. 4, 151 S.W.2d 211, 221.

■ *Prejudicial closing argument?* The assistant prosecuting attorney said: "* * * This wasn't a prank. He didn't go in and steal some tennis balls or baseball bats. He went in there and took $700 worth of guns and rifles out of that store. Those shotguns and rifles haven't been returned, they haven't been found. And you can bet your life they are not going to be used for hunting or for any legal purposes. Those are shotguns now. * * *" At this point counsel for defendant made an objection and the court said "There's been an objection; let's attempt to stay within the record." No other or further action was requested by the defendant. It is urged that the state thereby implied that the guns were stolen by defendant for the specific purpose of perpetrating violence and, coming as it did when the Watts riot was still fresh in the public mind, was so prejudicial and inflammatory as to deprive defendant of the full and fair consideration of the evidence. This interpretation would require us to reach and stretch the argument beyond the realities of the situation. The plain truth is that the assistant prosecuting attorney did not directly or indirectly refer to Watts, rioting or violence. Defendant was a negro but no reference was made to race. We find nothing in the argument from which the reasonable inference could be drawn

that reference was being made to these tender subjects. The "bet your life" argument was irrelevant, nothing on this subject having been put in evidence. The court properly noted the objection and admonished counsel to stay within the record. No request to strike or to instruct the jury to disregard was made, and no other or further action was requested. We find nothing to place the court in error in its ruling.

An examination of the record as required by Supreme Court Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM: The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.