**STATE of Missouri, Respondent,**

**v.**

**Lonnie Ray WATSON, Appellant.**

**No. 53150.**

Supreme Court of Missouri, Division No. 2.

March 11, 1968.

**124**

————◆————

Norman H. Anderson, Atty. Gen., J. Steve Weber, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

BARRETT, Commissioner.

An information charged that on September 8, 1966, James Brewster, Jr., and Lonnie Ray Watson burglarized "the storeroom of C. J. LaCapra, located at 1417 East 55th Street * * * by bursting and breaking the front and back doors of said storeroom." Lonnie was separately tried and a jury found him guilty and fixed his punishment at five years' imprisonment. Upon this appeal the meritorious question is whether, viewing all the circumstances favorably to the state, they permit the finding of Lonnie's guilt. Brewster was seen inside the burglarized building and was arrested as he came out the front door but neither he nor Lonnie testified and while perhaps not material here it does not appear what disposition was made of his case. Lonnie was not seen in the building and, admittedly, there is no evidence whatever that he actually took part in burglarizing the building. Lonnie was halted and arrested as he was "walking north across 55th Street." When the police arrived on the scene a red Pontiac that had once belonged to Izola Munion, Lonnie's mother, was parked at the rear of the building but while the officers were arresting Brewster and Lonnie the automobile was driven away by someone unknown to the police. In his opening statement the prosecuting attorney said, "In short, what the State is going to do in this case is put the man who was found in the building, James Brewster, in the driver's seat of that red Pontiac, prior to the commission of this burglary. *Then, the State is going to prove that Lonnie Ray Watson was also in the driver's seat of that mysterious car,* that red Pontiac, which left the parking lot while all of this was going on in there. In other words, *to prove our case, we are going to connect up Lonnie Ray Watson with that red Pontiac.* We are going to connect up Brewster with that red Pontiac. And then we will ask you to infer from the evidence that if Brewster was caught inside, and if Watson (Lonnie) was caught over here (indicating), and *if they were both connected with the red Pontiac,* which was not there a few minutes after the crime was committed, *that the two people acted together in the commission of this crime."* And, at the outset, it may be said, had there been any evidence from which these facts as outlined by the prosecutor, particularly the italicized quotations, could reasonably be found that the charge and the jury's finding would be supported, but the problem is whether upon this record there is any such proof. In the following cases one or more of the noted factors together with other compelling circumstances, such as flight or some act of deception, were present, State v. Boothe, Mo., 364 S.W.2d 569; State v. Burton, Mo., 357 S.W.2d 927; State v. Brown, Mo., 291 S.W.2d 615.

Conjetta LaCapra owns the building at 1417 East 55th Street in which was her beauty shop, the Food Villa, a real estate office, a storage room and to the rear a parking area. On September 7th, at six o'clock, the doors, particularly the front door, were locked. At 2:25 a.m., on September 8, 1966, two patrol cars were dispatched to 55th Street and Paseo on a report that there were "prowlers on the inside." Officer Donahue drove south on Paseo, turned west on 55th Street and im-

mediately saw James Brewster inside the beauty shop. As Brewster came out the front door and started walking west Officer Donahue arrested him. Officer Bulyar, in his patrol car turned off of 55th Street, drove south on Paseo and turned into the entrance to the parking lot at the rear of the building. As he turned he saw a red Pontiac, "not occupied at the time," on the parking lot. From the headlights of his car he could see that the back door was open. He too saw "one shadow" inside the building and in a few seconds Donahue "stated he had one suspect under arrest." As Bulyar again "went back out of the parking lot" he looked at the red Pontiac and noted its Missouri license, number ZZ4865. He says that he noted the license number because there were no other vehicles on the parking lot. As Donahue was searching Brewster he saw Lonnie "walk from the corner of this building (indicating on a plat), northbound across 55th Street." When he was about "the center of the block" Donahue yelled to him "to halt." At the same time Bulyar too saw Lonnie "walking up the middle of Paseo towards Officer Donahue's car" and they arrested him. Brewster and Lonnie were searched, nothing incriminating was found on Lonnie, and Donahue took them to the police station.

Inspection of the building revealed that the front door had been forced open, there were pry marks on the door. There were also pry marks on the rear door and it was the opinion of an investigating detective that entry had been forced through the front door and that the rear door had been opened from the inside after an unsuccessful attempt to pry it open. The beauty shop had been ransacked, quite a number of pennies "strung all over the floor" and there was a hole in the partition wall, 20 by 30 inches, between the beauty shop and a storeroom into the Food Villa. No property was missing from any part of the building and no burglary tools were found and there were no fingerprints. And when Officer Bulyar returned to the rear of the building the red Pontiac was gone and it is not known who drove it away.

A Department of Revenue employee testified that title to the red Pontiac had been transferred to Izola Munion, Lonnie's mother, 3344 Askew and the license plate ZZ4865, had been transferred from a Rambler automobile to Izola's 1965 Pontiac. (The defendant, from the records of the Bureau of Vital Statistics, established that Izola died on July 10, 1966, two months before the burglary of LaCapra's building.) To show Brewster's connection with the red Pontiac a police officer testified that as a result of a collision on September 6, 1966, at 12th and Cherry, between his patrol car and the red Pontiac he gave Brewster two traffic tickets. But no one ever saw Lonnie in the red Pontiac, either on the morning of the burglary or at any other time.

At the time of his arrest Bulyar said that the first time he saw Lonnie he was "walking down approximately the center of 55th Street." As indicated, Donahue said that as he was searching Brewster he saw Lonnie "walk from the corner of this building (indicating) northbound across 55th Street." He said that when he called to him "to halt" he immediately stopped and walked toward the officer's patrol car. Neither Officer Bulyar nor Officer Donahue saw Lonnie inside any of the buildings or in the automobile. The closest he was seen to the burglarized beauty shop was as he walked down the street toward Officer Donahue's patrol car. It was sought to imply that Lonnie may have been waiting for a bus but it was established that there were no buses at that particular location at 2:25 a.m., on September 8, 1966. As to his conduct when halted Officer Donahue said that Lonnie was not running, he was just walking, the area was lighted and Lonnie was not attempting to hide and he did not have anything in his hands and no car keys were found on his person. And except for his proximity to the building and except as it may be inferred from Brewster's driving a red Pontiac registered and

licensed to his mother there is no proof that Lonnie and Brewster were together or even so much as acquainted.

Thus there is no proof that Lonnie furnished or drove the red Pontiac either to transport the burglar or burglars or as a getaway vehicle, and, of course, some unknown third person drove it away. No stolen property was found on either Brewster or Lonnie and consequently he may not be connected with the offense by reason of his recent possession of stolen property. In State v. Watson, Mo., 350 S.W.2d 763, it was held that the presence of the defendant as a passenger in an automobile in which there were stolen articles was not sufficient to support the inference and finding of burglary and theft. As indicated, there was no flight or deception on Lonnie's part as to Brewster (State v. Rossini, Mo., 418 S.W.2d 1) and there is no proof that he did any overt act in the commission of the burglary and plainly in these circumstances there is no proof of a conspiracy or concerted action between Brewster and Lonnie. State v. Whitaker, Mo., 275 S.W. 2d 322. In short, the circumstances here may create a strong suspicion of Lonnie's connection with the burglary but in far more compelling circumstances it has been held that the evidence was not sufficient to support a conviction. State v. Rogers, Mo., 380 S.W.2d 398; State v. Watson, supra; State v. Whitaker, supra; State v. Tracy, 284 Mo. 619, 225 S.W. 1009; State v. DeWitt & Jones, 191 Mo. 51, 60, 90 S.W. 77, 80, and State v. Rutledge, 304 Mo. 32, 37, 262 S.W. 718, 720. "The fact that the defendant was seen going into the enclosure at the rear of the building is a circumstance that is entirely consistent with his innocence. If the defendant had fled or there had been other corroborating circumstances, as in the cases cited by the State, the conviction might be sustained. But mere suspicion, however grave, is not of itself sufficient to support a conviction."

And "(s)ince the record indicates that the state has had an opportunity to develop its case fully, there is no need to remand the case for a new trial. * * * Accordingly the judgment is reversed and the defendant is discharged." State v. Rogers, 380 S. W.2d 1. c. 400; State v. Whitaker, supra; State v. Rutledge, supra; State v. DeWitt & Jones, supra.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.