**STATE of Missouri, Respondent,**

v.

**Bill Louis COLTHORP, Appellant.**

**No. 53834.**

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Gene E. Voigts, Special Asst. Atty. Gen., North Kansas City, for respondent.

J. Arnot Hill, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

MORGAN, Judge.

Defendant was charged with robbery in the first degree. Sections 560.120 and 560.135, RSMo 1959, V.A.M.S. The jury found him guilty as charged and assessed punishment at sixty (60) years imprisonment. Under Supreme Court Rule 27.04, V.A.M.R., the trial court reduced the duration of confinement to 45 years. Defendant has been ably represented, both in the trial court and on this appeal, by experienced members of the staff of the Legal Aid and Defender Society of Greater Kansas City.

■ The sole issue presented here is defendant's contention the trial court erred in overruling his motion for a directed verdict of acquittal offered at the close of the State's evidence. To accept this argument, we would have to conclude as a matter of law that the evidence was not sufficient to sustain the judgment of conviction. Supreme Court Rule 26.10. In determining this issue, "* * * the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." State v. Watson, Mo., 350 S.W.2d 763, 766 [1]; State v. Wishom, Mo., 416 S.W.2d 921, 923 [1].

David Weinstein owned a liquor store located at 2123 Truman Road in Kansas City, Missouri. The building was on a corner and faced Truman Road. A side door opened on Brooklyn Avenue. A long counter with a gate near the center area extended the length of the store. On August 25, 1967, at approximately 3:15 P.M., Mr. Weinstein was standing behind the counter near the gate. His wife and another employee were also working behind the counter.

Mrs. Weinstein testified she had gone to the front of the counter for a six-pack of beer two customers had ordered. When she turned back, defendant was standing at the counter pointing a double-barreled sawed-off shotgun at her forehead. He said, "This is a holdup." In addition to telling the customers to stand still, he told her to get on her knees. As she bent down, she pushed a button of the Mossie Alarm System. It did not make a noise in the store, but signalled a central office from which the police were notified. Defendant said, "Don't move and I won't hurt you." Each time she looked up, he told her to look toward the floor. While on her knees she saw a man come through the gate and start toward the cash box. After some eight or ten minutes, her husband came from the rear of the store. Defendant asked, "Where are you going?" and had him raise his hands. While "covering" both of them, he backed out of the store. Her husband picked up a gun and ran out the door in pursuit.

Mr. Weinstein testified two men, other than defendant, approached him at the counter. While answering an inquiry of one as to the brand of cigars carried for sale, the second told him it was a holdup, to put up his hands and not make any false moves. One of the two, neither of whom is identified in the record, held a pistol to his neck and told him to open the safe at the rear of the store. He complied and this participant took from the safe the silver drawer, a pistol, a zippered bank bag and blank money orders. Mr. Weinstein, then said, "* * * brandishing the pistol against me again, he went through my pockets and emptied my billfold and case and money clip." He thought $1,100 was taken. (The information alleged $791.22 in money and property.) This unidentified robber then directed him to the rear of the building and ordered him to open the side door. He complied and this one person stepped out onto Brooklyn Avenue. There is no evidence as to what happened to the second person that had accosted him. Mr. Weinstein pushed an alarm button in the back room and then ran to the front of the store. When within about five feet of

where his wife was kneeling, he saw the defendant for the first time with a "twin-barreled" shotgun pointed across the counter. He testified, "* * * he instructed me to hold still or he was going to blow my brains out * * *" Defendant then backed out the front door, and he gave chase. A police car with two officers arrived.

Both officers testified they saw defendant leave the store with a rug wrapped around the shotgun. He ran along the side of the store on Brooklyn Avenue and into an alley. One of them fired a warning shot and defendant, although not injured, fell to the ground with his arm on the rug and gun. Both officers testified the shotgun was loaded with a shell in each barrel and was cocked for firing when taken from defendant.

It was further developed that there was no conversation between defendant and the other two men, and defendant did not take any money or property.

The defendant did not testify nor offer any evidence in his behalf.

 His counsel in both his printed brief and oral argument contends the State failed to prove beyond a reasonable doubt that defendant was acting in concert with the two men who robbed Mr. Weinstein. If true, defendant could only be guilty of attempted robbery with a deadly weapon for which the penalty could not exceed seventeen years. Sections 556.140 and 556.150(1), RSMo 1959, V.A.M.S. It is argued that the proper inference to be drawn from the evidence is that defendant was thwarted in his lone effort to commit a robbery. This is based on the contention there was no evidence that the three men entered the store together or that there was any communication between them after they entered. It is suggested it was only a coincidence that different persons arrived near the same time with the common intent to commit a robbery. It is asserted that this argument is tenable under our holding in State v. Castaldi, Mo., 386 S.W.2d 392. There the defendant was discharged when the State's evidence only showed him to be standing in a wooded area watching others dismantle an automobile. We held that presence at the commission of a felony is evidence to be considered, but that something more than mere presence must be shown. At loc. cit. 395, it was held, "It is necessary that the accused 'associate himself with the venture' in some fashion, Mays v. United States, 8 Cir., 261 F.2d 662; that some form of affirmative participation be shown, State v. Butler, Mo.Sup., 310 S.W.2d 952, 957,— participation in the crime as something that he wished to bring about; that he sought by his action to make it succeed, United States v. Peoni, 2 Cir., 100 F.2d 401, 402; that he 'consciously shared' in the criminal act. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919." Defendant's action here obviously is distinguishable from the "mere presence" of defendant in the Castaldi case. However, since defendant took nothing himself, his conviction can only stand if he was acting in concert with the others. There was no direct evidence that he was. However, as the State contends, there were inferences reasonably to be drawn from the evidence that defendant and the others were acting together. The near simultaneous announcement of their presence, his declaration it was a holdup, his holding of an employee hostage for eight or ten minutes, his being content to allow the others to take the money when he obviously had control of the arena with a sawed-off shotgun, and delaying his departure until the others had escaped, were all for consideration. We find that an entirely reasonable inference defendant was acting in concert with the other two was created by these circumstances. State v. Gregory, Mo., 406 S.W.2d 662, 665. It was not necessary for the State to prove defendant personally committed all the acts which constitute the essential elements of the crime charged. State v. Butler, Mo., 310 S.W.2d 952, 957. The court correctly overruled the motion for a judgment of acquittal.

An examination of the record as required by Supreme Court Rule 28.02 reveals no error.

The judgment is affirmed.

All of the Judges concur.