**STATE of Missouri, Respondent,**

v.

**Whitney CONNOR, Appellant.**

**No. WD 33896.**

Missouri Court of Appeals,
Western District.

March 22, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 3, 1983.

Application to Transfer Denied June 30, 1983.

Linda Murphy, Nangle & Nangle, P.C., Clayton, for appellant.

John Ashcroft, Atty. Gen. and Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

In a court-tried case, the appellant Whitney Connor was found guilty as an accomplice under § 565.050, RSMo 1978[1] of first degree assault where a deadly weapon was used. He was sentenced to ten years in prison for this Class A felony.

On October 14, 1981, Danny Julian committed an armed robbery of a jewelry store in Kirksville, Missouri. Julian was the perpetrator of the assault for which Connor was charged. At the time Connor was engaged to Julian's sister. A sizeable quantity of jewelry which was contained in display trays was taken in the robbery. The robbery occurred at 10:00 o'clock in the morning. The testimony of the victim was that Julian alone committed the robbery.

Early that afternoon, Trooper Romanus of the Highway Patrol stopped a car being

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

driven by Connor on Highway 63 in the area of the Randolph-Macon County line. The automobile was a green Oldsmobile matching the description of the automobile involved in the jewelry store robbery. After the trooper flashed his lights, Connor pulled the car over on the shoulder of the road. The trooper parked his car some three or four feet behind the Oldsmobile. The Oldsmobile belonged to a Mr. McSpadden who was one of two roommates of Connor in Kirksville where Connor attended Northeast Missouri State University. Romanus initially noticed one person in the car, that being Connor. Connor came back to the patrol car and asked if he had been speeding. The trooper said "no". Connor voluntarily gave Romanus his driver's license. Romanus then noticed Danny Julian curled up on the floor of the passenger side of the Oldsmobile. After then ordering Julian out, Romanus ordered Connor and Julian to stand by the right front fender of the Oldsmobile with their hands on the hood. The trooper was unable to find any identification for Julian in a duffle bag in the back of the car. The trooper then had Julian get the keys and open the trunk. Julian and Connor were then placed back at the right front of the Oldsmobile while Romanus searched the trunk. Romanus started on the right side of the trunk and worked his way over to the left side while trying to keep an eye on the two. While he was searching the trunk, the two were talking while sitting on the right side of the hood of the Oldsmobile. Just as Romanus discovered a green trash bag on the left side of the trunk, Julian suddenly appeared, grabbed his hand and jerked his service revolver out of his holster. The trooper grabbed the barrel of the gun with his left hand and forced Julian back toward the patrol car. Although Julian still had the gun, the trooper pushed him back onto the hood while still trying to watch Connor. Just as the trooper was about to win the struggle for the pistol, Julian's expression changed from being confident to scared and then he yelled, "Whitney, come back here, you know what needs to be done, let's get this over with." As the struggle continued,

the trooper noticed Connor coming around the right rear corner of the Oldsmobile. At that point Romanus decided he could not fight the two of them and he ran across the highway. Several shots were fired by Julian with the service revolver. Romanus was shot several times, causing him severe injury. From the other side of the road, Romanus, who was then on the ground, saw Julian, standing next to Connor, put the gun in his waistband and heard him say to Connor something to the effect, "let's go", and then he ran directly to the patrol car, got in and drove away. Connor stayed at the scene. Romanus did not remember Connor speaking to him or helping him. At no time during the struggle with Julian did Connor make any threatening gesture toward the officer.

A later search of the Oldsmobile netted two trash bags in the trunk filled with jewelry and property taken in the morning robbery. That same afternoon, law enforcement personnel went to the house where Connor was living and discovered in the driveway several items of jewelry taken in the robbery. Also found were boxes and display trays from the robbery, which had a treadmark on them, apparently caused by a car having been driven over them.

A statement taken from Connor was introduced by the state. In it he said that Julian was visiting him in his apartment at the time of the incident and that the visit had commenced two days prior on October 12. On October 14, Connor got up at 9:30 in the morning. Roommate McSpadden was still asleep and Julian was sleeping on the living room floor. Connor went back to his room, and at 9:45, Julian left the apartment taking the Oldsmobile and returned at 10:09. Connor asked McSpadden if he could borrow the car to take him and Julian to St. Louis to pick up their girlfriends. Before leaving, Julian opened the trunk and Connor saw in it a full green garbage bag. Julian closed the trunk and drove five miles out of town and then asked Connor to drive. The statement is generally consistent with the officer's testimony as to the struggle and shooting. Connor said he heard Julian

say, "Hey, Whitney", at which point Connor hopped off the hood of the car. Connor claims to have talked to the officer following Julian's departure and to have stopped a truck for help. He denied any knowledge as to the jewelry store robbery or the stolen property.

Connor here contends his motion for judgment of acquittal at the end of the state's case should have been sustained because of insufficient evidence of Connor's affirmative participation in the assault, insufficient proof he was an aider in nor had the mental intent to commit the assault and that the evidence against him was circumstantial and not inconsistent with any theory of his innocence.

█ Under the new 1979 Missouri Criminal Code, the sections relevant to finding the appellant guilty as an accomplice in the instant case are:

Section 562.016 which provides in part:

1. Except as provided in section 562.026, a person is not guilty of an offense unless he acts with a *culpable mental state,* that is, unless he acts purposely or knowingly or recklessly or with criminal negligence, as the statute defining the offense may require with respect to the conduct . . . . [Emphasis added.]

Section 562.036 which provides:

A person *with the required culpable mental state* is guilty of an offense if it is committed by his own conduct or by *the conduct* of another person for which he is criminally responsible, or both. [Emphasis added.]

Section 562.041 which provides in pertinent part:

1. A person is criminally responsible for the conduct of another when

\* \* \* \* \* \*

(2) Either before or during the commission of an offense *with the purpose of promoting* the commission of *an offense,* he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense. [Emphasis added.] [2]

█ Thus, sections 562.036 and 562.041 combine to require the trier of fact to make two separate findings before an accomplice may be held responsible for the offense of another. The trier of fact must first find that the defendant *"purposefully promoted an offense",* and had the requisite *"culpable mental state"* for all crimes for which he is to be held liable. Upon a finding of *purpose,* the defendant is deemed "criminally responsible" for the conduct of the principal. The general rule is that if the alleged accomplice has the purpose to promote the offense, he necessarily will have the required culpable mental state for that offense. *See State v. White,* 622 S.W.2d 939 (Mo. banc 1981).

█ Connor's contention that the trial court erred in denying his motion for acquittal at the end of the state's case is ruled against him. The appellant is precluded from raising the claim that there was insufficient evidence to submit the case since he presented evidence on his own behalf (testimony of his wrestling coach and his fiance). He thus waived any claim of error as to his motion for acquittal at the close of the

---

2. Although appellant raises no affirmative defense of *"withdrawal"* directly, he implies that his actions during the course of events and his remaining at the scene following the shooting may negate his participation as an accomplice in the assault. The relevant part of section 562.041 provides:

2. However, a person is not so responsible if:

(3) *Before* the *commission* of the offense he *abandons* his purpose and *gives timely warning* to law enforcement authorities *or* otherwise *makes proper effort to prevent* the commission of the offense.

It is clear that if appellant had wanted to prevent the assault on the officer the opportunity to do so was available. Appellant had adequate time to warn the officer of the approach of Julian, who had been sitting on the hood of the car with him, and who then sneaked around the side of the car to attack the officer. Appellant made no effort to give a timely warning before the assault. His remaining at the scene after the deed was done is inadequate to negate accomplice liability.

state's case. *State v. Marshall,* 571 S.W.2d 768, 773 (Mo.App.1978). See also, *State v. Hill,* 438 S.W.2d 244, 247 (Mo.1969); *State v. Spraggins,* 368 S.W.2d 407, 408 (Mo.1963); and *State v. McDaniel,* 392 S.W.2d 310, 314 (Mo.1965).

■ Appellant's contentions that the evidence was insufficient to prove that 1) he affirmatively participated in the offense of assault in the first degree, 2) acted with the purpose of aiding another in committing the offense, or 3) had the intent to commit the offense, are treated together and are ruled against him.

In *State v. Nichelson,* 546 S.W.2d 539, 543 (Mo.App.1977), the court held that affirmative participation may be shown by circumstantial evidence, and proof of any form of affirmative participation in the crime is sufficient to support a conviction. The court, in *State v. Puckett,* 611 S.W.2d 242, 245 (Mo.App.1980), stated that while the mere presence of an accused at the scene of a crime will not sustain a conviction, presence may be considered along with other incriminating evidence to determine if the *total circumstances raise a reasonable inference* that the accused was a participant in the offense charged. Presence, companionship and conduct before and after the offense are also circumstances from which one's participation in the crime may be inferred. *State v. Nichelson,* 546 S.W.2d 539, 543 (Mo.App.1977).

The fact that officer Romanus ordered Julian and Connor to stay at the front of the car while he searched the trunk demonstrates that he was taking charge and had a reasonable expectation that they comply with his orders. When Julian violated the officer's order by sneaking around to the back of the car and attacking the officer, that did not automatically give Connor the right to leave the front of the car. Connor was obligated to obey the reasonable orders of the officer, not to respond to the requests of his friend Julian. Thus, when Connor responded to Julian's request for help when the officer was gaining the advantage in the struggle, the officer (and hence the trier of fact), could reasonably believe that

Connor was coming to the aid of his friend. The officer did not give Connor permission to leave the front of the car and his doing so at the request of his friend was clear evidence as to where his allegiance lay, and this disobedience of a police order, in conjunction with the statement of Julian, "Whitney, come back here, you know what needs to be done, let's get this over with", was sufficient to place the officer in fear of imminent harm from Connor, causing him to abandon his struggle with Julian. Connor, thus, affirmatively participated in and aided in the assault of officer Romanus.

As to Connor's purposefully promoting the offense as required by § 562.041, the totality of the circumstances point to his purposeful promotion of the attack on officer Romanus. Connor's presence and actions at the scene of the offense, in conjunction with his companionship with Julian prior to the robbery and after the robbery (Julian was staying in Connor's house for two days prior to the robbery and Connor was engaged to Julian's sister); his driving the car which contained the stolen jewelry with Julian crouched on the floorboard; his seeing the plastic garbage bags in the trunk of the car before leaving town; and the fact that some of the jewelry was found in the driveway to his house where the car had been parked, all give rise to a reasonable inference that Connor either affirmatively participated in the venture or offense, or had knowledge of the offense and was in joint possession of stolen property, and thus had a motive for purposefully promoting and participating in the assault. See *State v. Puckett,* supra, and *State v. Nichelson,* supra.

In the instant case, where the appellant did not announce his intentions to the victim and did not testify at trial, the element of intent can be proved circumstantially. *State v. Jolliff,* 638 S.W.2d 802, 803 (Mo. App.1982). See also, *State v. White,* supra, which notes that if the alleged accomplice has the *purpose* to promote the offense, he necessarily will have the required culpable mental state for that offense.

In *State v. Gregory,* 406 S.W.2d 662, 665 (Mo.1966), a factually similar case to the case at bar, the Supreme Court of Missouri held that while there was no direct evidence of the criminal defendant's actual participation in the crime itself, there was direct evidence of his immediate presence at the time, from which the jury was entitled to draw an inference, if it so found, that he was aiding and abetting.

Gregory involved a filling station robbery in which two men took part. Defendant was the driver of the car at the time of the arrest. The car contained the two actual robbers, the revolver used in the crime, and all or part of the loot, and was stopped within a very few minutes after the robbery and within four blocks of the filling station. The court determined that the defendant's apparent acquaintance with the perpetrators and his conversations with one or both of them, and indeed all the circumstances, gave rise to an entirely reasonable inference that defendant was acting in conjunction with the other two defendants. The court in Gregory also noted that joint possession of loot from a robbery may be sufficient to raise an inference of guilt adequate for conviction if a conspiracy or *common purpose* to commit a crime is shown. Id. at 666.

As noted above, in the instant case the appellant was driving the car containing the actual perpetrator of the jewelry store robbery; was informed by the officer that he was being stopped on suspicion of robbery; was well acquainted with the perpetrator; the loot from the robbery was in the trunk of the car; the perpetrator was crouched on the floorboard of the car; the appellant saw the trash bags in the trunk before leaving in the car; jewelry from the robbery was found in the driveway to his home; the appellant made no effort to stop the assault on the officer and responded to his friend's request for help in direct contravention of the officer's order to remain at the front of the car. The totality of these circumstances give rise to a very reasonable inference of guilt.

Appellant's fourth point contends that the evidence presented was totally circumstantial and not inconsistent with any reasonable theory of innocence. This point is ruled against him.

In reviewing a criminal case on appeal the facts in evidence and all favorable inferences reasonably drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. McGlathery,* 412 S.W.2d 445, 447 (Mo.1967); and *State v. Chase,* 444 S.W.2d 398 (Mo. banc 1969). The general rule when the state's case is based upon circumstantial evidence is "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey,* 368 S.W.2d 413, 416 (Mo.1963). See also: *State v. Franco,* supra, at 534; *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970).

Appellant in the instant case asserts that the state's case was based totally on circumstantial evidence and *was not* inconsistent with any reasonable theory of innocence. The prevailing rule on circumstantial evidence, supra, is realistically tempered in its application by several recent cases decided by the Missouri Supreme Court. In *State v. Franco,* supra, at 534, the court notes:

"[i]n a case involving circumstantial evidence the *circumstances need not be absolutely conclusive of guilt,* and they *need not demonstrate impossibility of innocence*[;] .... the *mere existence of other possible hypothesis is not enough* to remove the case from the jury." [Emphasis added.]

See also: *State v. Thomas,* supra, at 162; *State v. Taylor,* 445 S.W.2d 282 (Mo.1969); and *State v. Maxie,* 513 S.W.2d 338, 339 (Mo.1974).

Thus, in the instant case, considering the totality of the circumstances, the appellant's argument that his actions at the

scene both during and following the assault are not inconsistent with *any* possibility of innocence, must fail. The trier of fact has the discretion to believe or disbelieve evidence presented to it and is in a much better position than this court to judge the truthfulness and credibility of witnesses. Due deference must be given to the trial court's discretion to judge credibility.

In a case based upon circumstantial evidence "[t]he state must show that the accused had some substantial nexus with the commission of the crime." *State v. Rogers,* 380 S.W.2d 398, 400 (Mo.1964). In the case at bar, the state produced strong evidence, which when viewed in its totality, demonstrates a substantial nexus between the accused and the crime. It has also been stated that "[w]here two equally valid inferences can be drawn from the same evidence, the evidence does not establish guilt beyond a reasonable doubt." *State v. Black,* 611 S.W.2d 236, 240 (Mo.App.1980). Here, the cumulative weight of the circumstantial evidence clearly demonstrates that "two equally valid inferences" cannot be drawn from the evidence in this case.

Notwithstanding Connor's cooperation with the officer when first stopped, his nonparticipation in the initial assault of the officer, and his remaining at the scene following the shooting, his immediate response to Julian's request for help in direct disobedience of a police order gives rise to a strong inference of complicity in the assault on the police officer. An innocent party with knowledge that he was being stopped on suspicion of robbery could be expected to obey all reasonable commands of the police officer and certainly would not respond to the call for help of an individual (friend or not), who was attacking the officer. If it had been the officer requesting assistance, the situation may have been different if Connor had responded, but in the instant case, the officer was gaining the upper hand. It is clear that but for the interference of Connor, officer Romanus could have regained control of the situation with Julian and would not have been overpowered and forced to retreat, subjecting himself to being shot.

Thus, Connor played a direct role in the assault of officer Romanus and was properly charged and convicted of the offense of assault in the first degree. The judgment of the trial court is affirmed.

All concur.